JOHN L. HOBSON et al., Executors, etc., *v.* RUTH C. HALE et al., Respondents, JAMES F. HALE et al., Appellants.

The provisions of a will must at least be of such a character as to leave no doubt of the testator's intent to have his real estate converted into personalty, in order to sustain the theory of equitable conversion.

H., a citizen of Massachusetts, died in that State, leaving a will which was there admitted to probate.  Said will, after various legacies and devises,

and after providing for the payment of life annuities to twelve different persons, contained this provision : " As to the residue and remainder of all my estate, both real and personal, not herein otherwise disposed of, it is my will that the same be and remain in the care and custody of my said executrix, and executors, and trustees, and their successors, well and safely invested until the decease of the last survivor of the life annuitants   *   *   *·  and that then the said residue and remainder with all the accumulated interest thereof shall be divided equally among my grandchildren, *per stirpes.*" The will was valid under the laws of Massachusetts; it contained no express direction for the conversion of the real estate into personalty or for the sale of the real estate. The testator died seized of valuable real estate in this State, and also owning a large estate, real and personal, in Massachusetts. In an action for the construction of the will, *held,* that there was no such expression of intent upon the part of the testator as to present a case of equitable conversion; that under said provision no title could vest in the beneficiaries until the final division of the estate on the death of the last life annuitant; that so far as the provision applied to the real estate in this State, its validity was to be determined by the law of this State, and as it worked an unlawful suspension of the power of alienation, it was void (1 R. S. 723, §§ 14, 15); and that upon the death of the testator the title to said real estate descended to his heirs at law.

*It seems* that if a power of sale could be implied, it would not cure this invalidity.

Also *held,* that said clause was repugnant to the provision of the Revised Statutes prohibiting accumulations, except for the times and purposes therein expressly permitted. (1 R. S. 726, §§ 37, 38.)

*Mower* v. *Orr* (27 Hare, 473), *Cookson* v. *Reay* (5 Beav. 22), *Earlom* v. *Saunders* (Amb. 41), *Cowley* v. *Hartstonge* (1 Dow. 361), *Hereford* v. *Ravenhill* (5 Beav. 55), *Burrell* v. *Baskerfield* (11 id. 525), *Power* v. *Cassidy* (79 N. Y. 602), *Lent* v. *Howard* (89 id. 169), *Manice* v. *Manice* (43 id. 303), distinguished.

(Argued March 3, 1884 ; decided April 29, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 11, 1883, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Theodore W. Dwight* for appellants. Equitable conversion may take place by implication as well as by express words.

The positive direction to convert, which is essential, may be implied. (Snell's Prin. of Eq. 142 ; *Fletcher* v. *Ashburner*, 1 W. & T. L. Cas. in Eq. 659, 676 ; 1 Brown's Ch. Cas. 497 ; *Cookson* v. *Cookson*, 12 C. & F. 121 ; *Thornton* v. *Hawley*, 10 Ves. 129 ; *Grieveson* v. *Kirsopp*, 2 Keen, 653 ; *Davies* v. *Goodhow*, 6 Sim. 585 ; *Burrell* v. *Baskerfield*, 11 Beav. 525 ; *Johnson* v. *Arnold*, 1 Ves. 168 ; *Cowley* v. *Hartstonge*, 1 Dow. 361 ; *Mower* v. *Orr*, 7 Hare, 473 ; *Burr* v. *Sim*, 1 Whart. 252, 262 ; *Dodge* v. *Williams*, 46 Wis. 70, 97 ; *Gould* v. *Taylor Orphan Asylum*, id. 106, 117 ; *Cook* v. *Cook*, 20 N. J. Eq. 375 ; *Craig* v. *Leslie*, 3 Wheat. 563 ; *Dodge* v. *Pond*, 23 N. Y. 69 ; *Earlom* v. *Saunders*, Amb. 240.)  Under the provisions of the will, the executors could only invest in government securities or bonds and mortgages upon real estate. They could not invest in land.  (Worcester's Dict., " Will," 1 ; *King* v. *Talbot*, 40 N. Y. 76 ; *Adair* v. *Brimmer*, 74 id. 551, 553 ; *Ackerman* v. *Emott*, 4 Barb. 626 ; *Ormiston* v. *Olcott*, 84 N. Y. 339 ; *Mower* v. *Orr*, 7 Hare, 473 ; *Cookson* v. *Reay*, 5 Beav. 22 ; *Cowley* v. *Hartstonge*, 1 Dow. 361 ; *Rigden* v. *Pierce*, 6 Madd. 353 ; *Dickinson* v. *Playor*, C. P. Cooper's Cases, 178 ; *Wilkes* v. *Steward*, Cooper, 6 ; *Cock* v. *Goodfellow*, 10 Mod. 489–496 ; Lewin on Trusts, 340 ; *Byrne* v. *Baer*, 86 N. Y. 210–220.)  The provision that the whole fund with the accumulated interest is to be " divided . equally," and distributed among the respective beneficiaries, points to a conversion. (*Burrell* v. *Baskerfield*, 11 Beav. 525, 532, 533 ; *Featherstonhaugh* v. *Fenwick*, 17 Ves. 298 ; *Grieveson* v. *Kirsopp*, 1 Keen, 653 ; Burr. L. Dict., tit. Distribution ; Bouv. L. Dict., tit. Distribution.)  The direction concerning release of dower in the fourth section of the will is not inconsistent with the view that the executors had a *power* in trust to sell. (*Malloney* v. *Horan*, 49 N. Y. 111.)  If there be two possible constructions of the twenty-second section of the will, one of which will make the provision valid, and the other which will make it void, it is the duty of the court to adopt the construction which will make the clause valid.  (Co. Litt. 42, 183 ; *Churchwardens' Case*, 10 Co. 67, b ; *Archibald* v. *Thomas*,

3 Cow. 284; *Many* v. *Beekman Iron Co.*, 9 Paige, 188;
*Shore* v. *Wilson*, 9 Cl. & Fin. 356, 397; *Robert* v. *Corning*,
89 N. Y. 237; *Downing* v. *Marshall*, 23 id. 366; *Post* v.
*Hover*, 33 id. 593.). A mere power to sell does not create an
equitable conversion. (*Matter of Fox*, 52 N. Y. 537; *Harris*
v. *Clark*, 7 id. 242; *Stagg* v. *Jackson*, 1 id. 206.) The fact
that the property is to be divided into shares will defeat an
election by any one or more of the devisees without the consent
of all. (*Fletcher* v. *Ashburner*, W. & T. L. Cas. in Eq. [3d
Am. ed.] 807; *Allison* v. *Wilson's Executors*, 13 S. & R. 330;
*Foreman* v. *Foreman*, 7 Barb. 215; *Deeth* v. *Hale*, 2 Molloy,
317; *Smith* v. *Claxton*, 4 Madd. 484, 494; *Chalmers* v. *Bradley*,
1 J. & W. 31, 59; *Holloway* v. *Radcliffe*, 23 Beav. 163, 171.)
All the devisees cannot unite in an election in this case, some
of them being infants. (*Fletcher* v. *Ashburner*, *supra*, 806;
*Burr* v. *Sim*, 1 Whart. 252, 265; *Van* v. *Burnett*, 19 Ves.
102; *Robinson* v. *Robinson*, 19 Beav. 494; Snell on Equity,
162.) The property having become personal, and the will
having become valid by reason of it, no mere right of election,
nor any exercise of it, could possibly relate back to the testa-
tor's death, much more to the moment before his death, and
thus make his will inoperative and void. (*Morrow* v. *Breni-
zer*, 2 Rawle, 185, 189; *Burr* v. *Sim*, 1 Whart. 252, 256;
Hare & Wall. notes to *Fletcher* v. *Ashburner*, *supra*, 807.)
The real estate is converted in this case, according to general
rules of law, from the moment of the testator's death. (*Beau-
clerk* v. *Mead*, 2 Atk. 167; *Ward* v. *Arch*, 15 Sim. 389;
*Robinson* v. *Robinson*, 19 Beav. 495; *Van Vechten* v. *Van
Vechten*, 8 Paige, 106, 124, 129; *Chamberlain* v. *Chamberlain*,
43 N. Y. 432; *Fairly* v. *Kline*, 2 Pen. 322; *Reading* v.
*Blackwell*, Bald. 166; *Rinehart* v. *Harrison's Executors*, id.
177; note to *Fletcher* v. *Ashburner*, *supra*, 800.) The effect
of the conversion prescribed in this case is to make the New
York real estate " pure personalty." It is a conversion " out
and out," without any qualifications or limitations whatever.
(*Stead* v. *Newdigate*, 2 Mer. 521; *Ashby* v. *Palmer*, 1 id. 296;
*Benton* v. *Hodsell*, 2 Sim. 24; *Griffith* v. *Ricketts*, 7 Hare,

299; *Du Hornmelin* v. *Sheldon*, 4 Myl. & Cr. 525; *Craig* v. *Leslie*, 3 Wheat. 564; *Anstice* v. *Brown*, 6 Paige, 448; *Downing* v. *Marshall*, 23 N. Y. 366, 393.) The disposition of the New York land in the twenty-second section of this will is governed by the law of Massachusetts, and under that law is valid. (Westlake on Priv. Int. L., par. 71–72; *Whicker* v. *Hume*, H. of L. Cas. 124, 156, 157; Dicey on Dom. 302, 297, 301; *Thornton* v. *Curling*, 8 Sim. 310; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424, 432, 434; *Despard* v. *Churchill*, 53 id. 192, 198; *Fordyce* v. *Bridges*, 2 Ph. 497; *Vansant* v. *Roberts*, 3 Md. 119; *Attorney-General* v. *Mill*, 2 Dow & C. 393, 402, 403; *Odell* v. *Odell*, 10 Allen, 4.) Though the respective parcels of real estate are in the same will, they must, for the purpose of construction, be regarded as though they were in different instruments. (Westlake's Priv. Int. L., §§ 83, 84; *Coppen* v. *Coppen*, 2 P. Wms. 291.) As to the estate in Massachusetts given to St. James' Church, which may be a fee, but which is subject to a conditional event, as no time is limited for the happening of the event, the conditional limitation may be too remote and void. The only effect of this would be to make the fee absolute in the church. (*Sears* v. *Putnam*, 102 Mass. 5.) The legacies and the annuities in the sections preceding the twenty-second do not suspend the power of alienation of the New York land. At most, they are but a charge upon the land in the nature of a lien, and the land may be sold subject to the lien. There is no trust term "suspending the power of alienation." (*Bevan* v. *Cooper*, 72 N. Y. 317, 325, 326.) An annuity in gross creates an implied charge on the land or the "*corpus*" of the estate. (*Gee* v. *Mahood*, L. R., 9 Ch. Div. 151; 11 id. 891; *Carmichael* v. *Gee*, L. R., 5 App. Cas. 588, 593; *May* v. *Bennett*, 1 Russ. 370; *Wright* v. *Callender*, 2 De G., M. & G. 652; *In re Tootal's Estate*, L. R., 2 Ch. Div. 628; *Mason* v. *Robinson*, L. R., 8 Ch. Div. 411; *Stewart* v. *Chambers*, 2 Sandf. Ch. 382; *Bliven* v. *Seymour*, 88 N. Y. 470.) Even an annuity payable out of rents and profits may be a charge upon land in special cases. (*Delaney* v. *Van Aulen*, 84 N. Y. 16, 21; 2 Story's Eq. Jur.,

§ 1064 a.) The fact that the annuities may be chargeable on the New York land does not, by itself, create a trust of any kind, but at most a power in trust. (*Proud* v. *Proud*, 32 Beav. 234; 32 L. J. Chan. 225 ; *Jacquet* v. *Jacquet*, 27 Beav. 332 ; *Dickinson* v. *Teasdale*, 1 De G., J. & S. 52, 59, 60 ; *Proud* v. *Proud*, 32 Beav. 234, 237 ; *In re Fox*, 52 N. Y. 530, 536 ; *Dill* v. *Wisner*, 88 id. 153.) If it be possible to hold that there is an express trust for the payment of annuities, or even of the legacies, then that can only be maintained on the ground that the annuities and legacies are a charge upon the land. (1 R. S. 729, § 55, subd. 2 ; *Lang* v. *Ropke*, 5 Sandf. 363, 370, 371 ; *Lang* v. *Wilbraham*, 2 Duer, 171 ; *McGowan* v. *McGowan*, id. 57, 59.) In determining whether a doubtful provision is a trust or a power in trust, if a construction that it constitutes a trust would make the provision illegal, the court will hold it to be a power in trust. (*Downing* v. *Marshall*, 23 N. Y. 366 ; explained in *Robert* v. *Corning*, 89 id. 237 ; *Post* v. *Hover*, 33 id. 593 ; *Tucker* v. *Tucker*, 5 id. 408.) The annuities themselves, considered as such, are not inalienable. (*Robert* v. *Corning*, 89 N. Y. 236 ; *In re Throckmorton*, L. R., 7 Ch. Div. 145 ; *Hatton* v. *May*, L. R., 3 Ch. Div. 148; *Hunt Foalsten* v. *Furber*, L. R., 3 Ch. Div. 285.) The annuity is personal estate and governed by Massachusetts law. (*Parsons* v. *Parsons*, L. R., 8 Eq. 260 ; *Marx* v. *McGlynn*, 88 N. Y. 357.) The residue vested in the living grandchildren *per stirpes* at the moment of the testator's death exclusively of any grandchildren who may be subsequently born. (2 Jarm. on Wills [5th Am. ed. per R. & T.], chap. 30, p. 703 ; *Singleton* v. *Gilbert*, 1 Cox, 68 ; 1 Brown's Ch. Cas. 542 ; *Hill* v. *Chapman*, 3 B. C. C. 891 ; 1 Ves. Jr. 405 ; *Coventry* v. *Coventry*, 2 Drew. & Sm. 470 ; 1 Cox's Cas. in Eq. 69, 72.) The testator manifested no intention to postpone the vesting of the estate by his direction to accumulate the interest, etc. (*Coventry* v. *Coventry*, 2 D. & S. 470, 475 ; *Montgomerie* v. *Woodley*, 5 Ves. 522 ; *Snow* v. *Pouldent*, 1 Keen, 186 ; *Saunders* v. *Vautier*, Cr. & Phil. 240 ; *Sears* v. *Putnam*, 102 Mass. 5, 9 ; *Lane* v. *Lane*, 8 Allen, 350.)

The Revised Statutes of New York make all accumulations of this kind exceeding minority void. (1 R. S. 726, §§ 37, 38; *Green* v. *Gascoyne*, 4 De G., J. & S. 565.) There is nothing in the words in the will that "then the said residue and remainder shall be divided" to postpone the vesting of the residue. (*Boreston's Case*, 3 Coke, 19; *Tomlinson* v. *Dighton*, 1 P. Wms. 170; 2 Wash. Real Prop. 579 [4th ed.]; *Goodtitle* v. *Whitby*, 1 Bur. 233; 2 Jarm. on Wills [5th Am. ed.], 419, 420; *Doe* v. *Ewart*, 7 Ad. & Ell. 636; *Livingstone* v. *Green*, 52 N. Y. 118; *Embury* v. *Sheldon*, 68 id. 227; *McKinstry* v. *Sanders*, 2 Sup. Ct. [T. & C.] 181; *S. C.*, 58 N. Y. 662; 2 Jarm. on Wills [5th Am. ed.], n. 7 to p. 421; *Phipps* v. *Arckers*, 9 C. & F. 583; *Manice* v. *Manice*, 43 N. Y. 303, 368; *Chapman* v. *Nichols*, 61 How. Pr. 275; *Mattison* v. *Armstrong*, 11 Hun, 245; *Sears* v. *Putnam*, 102 Mass. 5.) Where the period of distribution is postponed until the attainment of a given age by the children, the gift will apply to those who are living at the death of the testator and who come into existence before the first child attains that age, *i. e.*, the period when the fund becomes distributable in respect of any one object or member of the class. (2 Jarm. on Wills, 712, and cases cited; Theob. on Wills, 143, 144.) The result is the same where the expression is to "all the children." (*Whitbread* v. *Lord St. John*, 10 Ves. 152.) If there were any suspension of the power of alienation, it would only affect the right of the unborn grandchildren to take their shares. (*Oxley* v. *Lane*, 35 N. Y. 340, 350; *Manice* v. *Manice*, 43 id. 384; *Harrison* v. *Harrison*, 36 id. 543; *Schettler* v. *Smith*, 41 id. 328.) The direction to accumulate for Ezekiel J. M. Hale, an adult, is void on general principles of law, independent of the New York statute of accumulations. (*Coventry* v. *Coventry*, *supra;* Broom on Legal Max. 151, 152; 1 R. S. 726, § 38.) The direction as to the shares of the minor grandchildren in their respective classes is valid during minority, but inoperative after it. (1 R. S. 726, §§ 37, 38; *Manice* v. *Manice*, 43 N. Y. 303; *Pray* v. *Hegeman*, 92 id. 508.) The interest on the share of Ezekiel J. M. Hale is pay-

able to him, in the same manner as though it were an absolute legacy. The accumulation being void, the rents and profits go to him as an incident to the principal. (*Pray* v. *Hegeman*, 92 N. Y. 519 ; *Saunders* v. *Vautier*, 4 Beav. 115 ; *Josselyn* v. *Josselyn*, 9 Sim. 63.) The direction to accumulate being valid until majority, as to the other shares, for the minor grandchildren, must be followed until majority, and then paid over to them. All subsequent interest belongs to them. (*Josselyn* v. *Josselyn*, 9 Sim. 63 ; *Genery* v. *Fitzgerald*, Jac. 468 ; *Bective* v. *Hodgson*, 10 H. L. Cas. 656, 665, 669 ; *Gibson* v. *Lord Mountfort*, 1 Ves. Sen. 483 ; 5 Edm. Stat. at Large, 315.) There is no "eventual" estate under the will in this case, except to the residuary devisees — the testator's grandchildren. (*Pray* v. *Hegeman*, 92 N. Y. 508, 520.) There is no unlawful perpetuity unless the power of sale is suspended by a testamentary direction binding on the executors. "The power of the sale must be fettered by the testator." (*Robert* v. *Corning*, 89 N. Y. 239.) A testator himself may prescribe a reasonable discretion as to sale. (*Robert* v. *Corning*, *supra*, 238, 239 ; *Manice* v. *Manice*, 43 N. Y. 303.) This will, involving a pure question of construction, is to be considered here with reference to every circumstance which the law permits to be taken into consideration in determining the meaning of the words used by the testator. (*St. Luke's Home* v. *Association for Indigent Females*, 52 N. Y. 191.)

*Joseph H. Choate* for respondents. The devise by the twenty-second clause of the will of the real estate situated in the State of New York is void, as illegally suspending the absolute power of alienation. (*Garvey* v. *McDevitt*, 11 Hun, 457 ; 72 N. Y. 556, 562 ; *Coster* v. *Lorillard*, 14 Wend. 265 ; *Hawley* v. *James*, 16 id. 62 ; *Hone* v. *Van Schaick*, 20 id. 566 ; *Harris* v. *Clark*, 7 N. Y. 242 ; *Van Vechten* v. *Van Vechten*, 8 Paige, 104 ; *DePeyster* v. *Clendening*, id. 295 ; *Amory* v. *Lord*, 9 N. Y. 403 ; *Morgan* v. *Masterson*, 4 Sandf. 442 ; *Jennings* v. *Jennings*, 5 id. 174 ; 4 Kent's Com. [12th ed.] 271 ; *Brewer* v. *Brewer*, 11 Hun, 147 ; 72 N. Y. 603.) There was no power

of sale given to the executors, and even if such power existed, the invalidity of the devise would not be cured thereby. (2 Story's Eq. Jur. 4793; 6 Abb. Dig. 175; *White* v. *Howard*, 46 N. Y. 144, 161; 5 Cow. 221; 93 U. S. 589.) As to real estate in this State an implied power of sale, or even an express power of sale given to executors, to be exercised at any time in their discretion, does not cure the invalidity of a limitation repugnant to the statutory prohibition against suspending the absolute power of alienation. (11 Hun, 147, 151; 72 N. Y. 603.) This will cannot be so construed as to work a conversion into personalty of the New York real estate. ( *White* v. *Howard*, 46 N. Y. 144, 161; *Fowler* v. *Depau*, 26 Barb. 224; *Harris* v. *Clark*, 7 N. Y. 242; *Neely* v. *Grantham*, 58 Penn. St. 433, 437, 442; 1 Jarm. on Wills [5th. ed., by Bigelow], *584; *In re Will of Fox*, 52 N. Y. 530, 537; *Savage* v. *Burnham*, 17 id. 561; 3 P. Wms. 20, note; *Wright* v. *Trustees, etc.*, *202, *208, *222; *Smith* v. *Claxton*, 4 Mad. Ch. 484; O'Hara on Construction of Wills [Wigram on Wills], chap. 12, p. 156; *Belmont* v. *O'Brien*, 12 N. Y. 394, 402; *Power* v. *Cassidy*, 79 id. 602, 613; *Lent* v. *Howard*, 89 id. 169; *Bramhill* v. *Ferris*, 14 id. 41; *Meakings* v. *Cromwell*, 5 id. 136; *Dodge* v. *Pond*, 23 id. 69; *Bogart* v. *Hastell*, 4 Hill, 492; *Gourley* v. *Campbell*, 66 N. Y. 169, 172; *Ackeroyd* v. *Smithson*, 1 Bro. C. C. 503; 3 Pom. Eq. Jur., § 1166.) No interest or title vested in the testator's grandchildren upon his death. (*Elwin* v. *Elwin*, 8 Ves. 547; 1 Jarm. on Wills [5th. ed., Bigelow], *605; *Loder* v. *Hatfield*, 71 N. Y. 92, 98; *Colton* v. *Fox*, 67 id. 348–353; *Warner* v. *Durant*, 76 id. 136; *Smith* v. *Edwards*, 88 id. 92, 104–108.)

MILLER, J. This action is brought to obtain a construction of certain provisions of the last will and testament of Ezekiel J. M. Hale who died at his residence in the State of Massachusetts, June 4, 1881, and whose said last will and testament was executed in that State. At the time of his death the testator was the owner of valuable real estate situated in the city of New York. The larger part of his estate was, however, in

the State of Massachusetts where his will was proved and where the executors resided. The will was valid under the laws of the State of Massachusetts. The testator gave various legacies and devises, and provided in different clauses of his will for life annuities to twelve different persons, and for certain other annuities payable in most instances quarterly, "until the final division of the rest and residue of my estate as hereinafter provided," then follows this provision : " Article 22d. As to the residue and remainder of all my estate, both real and personal, not herein otherwise disposed of, it is my will that the same be and remain in the care and control of my said executrix and executors and trustees and their successors, well and safely invested, until the decease of the last survivor of the life annuitants named in my foregoing will, and that then the said residue and remainder, with all the accumulated interest thereof, shall be divided equally among my grandchildren *per stirpes,* to hold to such grandchildren so distributed and to their heirs, executors, administrators and assigns forever."

The questions arising upon this appeal relate to the validity of the above twenty-second article of the testator's will so far as it affects the testator's real estate in this State. The appellants' counsel claims that the testator, by implication, in this twenty-second clause of his will, directs his executors to sell his lands wherever situated, and to convert them into money for the purpose of investment and distribution, and that thereby a case of equitable conversion is presented from the moment of the testator's death. The correctness of this position must depend on the construction to be placed upon the language of the clause in question and the intention of the testator to be derived from the various provisions of the will. The will on its face contains no direction for the conversion of the real estate into personalty, and if such a construction can be placed upon the clause cited it must arise from implication only. There is no doubt of the correctness of the rule claimed by the appellants' counsel, that equitable conversion may take place by implication as well as by express words. It is conceded that

there must be a positive direction to convert, but it is insisted that such positive direction may be implied. Perhaps this position may be correct if the provisions of the will are of such a character as to leave no question in regard to the intention of the testator, but in order to uphold a conversion of real estate into personalty there should be such an implication of the testator's design as to leave no question in regard to the same. While conceding the correctness of the rule laid down in the authorities cited by the appellants' counsel, it is by no means clear that the implication arising from the clause in the will referred to is so strong as to warrant the inference claimed to be derived from the language employed and the general purpose which the testator had in view. The question then arises whether the language of the will creates, on its face and in view of the circumstances surrounding the testator, a sufficient implication to authorize the conclusion that his intention was to convert all his real estate into personalty and to distribute the same as provided in the clause of the will cited.

The learned counsel for the appellants lays considerable stress upon some of the words employed by the testator in the twenty-second clause of his will, and insists that if properly interpreted they contain unmistakable evidence of his intention to convert his real estate into personalty. It is no doubt true, as is claimed, that the words, " it is my will," comprehend a plain and positive direction, and a command to carry into effect the purpose of the testator, and courts of equity cannot be too vigilant and astute in enforcing this imperative mandate in accordance with the directions given. The direction as to the residue and remainder of the testator's estate, both real and personal, that it shall be and remain in the care and control of his executors well and safely invested, involves the inquiry whether the testator intended thereby to direct a sale and distribution of his real estate and an investment of the avails arising therefrom in personal securities. The language employed vests the executors with a power over the estate which shall be in their hands at any time. It does not direct any change in the character of the property or prescribe the nature

of the investments to be made, or·the manner in which this part of their duty shall be performed. The power conferred while it is direct is of a general character and would seem to be such as is usually given to executors and trustees for the proper exercise of their functions. The language employed may have all due effect in applying it to the management of the entire estate, both real and personal, without changing the real estate into personalty, and it would require a very liberal interpretation to hold that it authorized a sale of the real property, without containing any authority to that effect, and a conversion of the avails thereof and an investment of the same into personalty. The use of the words "to be and remain * * * well and safely invested," in connection with those employed, must, we think, be regarded as referring to the condition of the testator's estate, which consisted of both real and personal property. He had invested a large amount in real estate, and the language of the will last cited may have full force and effect by applying it to his estate as it existed at the time of his death. It would be a strained construction to hold that any direct or implied authority was given to sell and dispose of real estate and convert the same into money; that the testator intended to leave directions as to what should be done with the money to be realized upon a sale, and that it should only be invested in such personal securities as were sanctioned by courts of equity in the investment of personal property belonging to estates. The claim of the learned counsel for the appellants, that under the language referred to there could be only an investment in government securities or in bonds and mortgages, can have no foundation, for the testator himself had made the investment in real estate and given no directions in his will or conferred any authority to dispose of the same and reinvest the proceeds. The testator by his selection of real estate has determined the character of the investment, and the question is not presented what it should have been if the real estate had been converted into personalty. If any specific meaning is to be given to the words, "to be and remain * * * safely invested," they would seem to indicate an intention of the tes-

tator that the real estate should continue in the hands of the executors as he left it at the time of his death and until the death of the last life annuitant.   In the absence of any direction for the sale or disposition of either the real or personal estate these words may well be regarded as relieving the executors from the responsibility of converting any portion of the personal property into different or other investments than those made by the testator himself.

We are referred to several cases in regard to the effect of the use of the word "invested" upon the doctrine of an implied equitable conversion, but none of them, we think, sustain the rule that such an implication can be upheld where the language employed, of itself, does not show a plain and clear intention to that effect and where the terms employed are not more specific, clear and palpable than the language cited from the testator's will.

In *Mower* v. *Orr* (7 Hare, 473), which is specially relied upon, the will provided for a division of the testator's estate into different parts and a disposition of the same in shares, two shares thereof to be invested in government funds, in the name of his executors, for the use of the children of his daughter who is named, the interest to be appropriated among them, and the principal to be divided between them at the age of twenty-one years.   In that case the vice-chancellor said "he was of opinion that the testator must be understood as directing the conversion of his copyhold estate into personalty.   The division of the entire property into a number of shares, and the direction contained in the will as to the investment and disposition of some of such shares, precluded the supposition that the testator intended the copyhold should remain unsold."   It will be noticed that here was a distinct direction that a portion of the estate should be invested for the benefit of the persons named and that the interest should be appropriated for their education and the principal to be divided among them at the time specified.   These requirements could not be carried out without a sale of the copyhold estate, and hence it might well be implied that such was the intention of the testator.   In the case at bar there is no direction as to the

investments or the payment of interest, or the division at any particular time of the avails, or any provision from which it might be fairly inferred that any such intention existed.

In *Cookson* v. *Reay* (5 Beavan, 22), the testator directed that a sum of money be invested "in land or some other securities" for the benefit of one for life with remainder to his children, "and in failure of these to A. and his heirs forever," which money had not been invested in land, held to have originally been impressed with the character of real estate, but, by the subsequent dealings therewith by the parties beneficially interested, to have acquired the quality of personalty. It was also decided that the words "other securities" applied to an *ad interim* investment before a purchase of land could be procured. It will be seen that the question was whether the direction included both kinds of securities, and the court confined the final investment to the land alone. As the case turned upon the words used and the direction was distinct as to the land, it can hardly be regarded as involving a question of equitable conversion, nor is it analogous to a case where there are no explicit directions from which it may be implied that a conversion was intended.

In *Earlom* v. *Saunders* (Ambler, 241), the testator directed £400 to be invested in the purchase of land or any other security as the trustee should think fit and convenient, to be settled as his last devise. The estate having passed to an infant who made a will, and the £400 not having been laid out as directed, it was held that it did not pass by the will as money and that the trustees had no right to consider it as money or land and the infant could not, and that the true construction was that it was to be invested in securities until lands could be purchased. We do not see that this case directly bears upon the question involved in the consideration of the words last cited from the clause of the will in controversy.

The case of *Cowley* v. *Hartstonge* (1 Dow. 361), was decided upon the intention of the testator as collected from the whole of the will, the terms of which are clearly different

from those of the will now presented for consideration, and we think it does not affect the question discussed.

In *Hereford* v. *Ravenhill* (5 Beavan, 55), the testator directed his trustees to invest his personal estate in freehold and other kinds of real estate upon certain trusts which were applicable to realty, and it was held that a conversion into real estate was intended. In that case there was a manifest intention to convert into realty, expressed in the will itself, while here the words we have considered do not import any such intention.

After a careful examination of the authorities relied upon we cannot resist the conclusion that none of them uphold the rule that the language in the clause of the will which has been cited and specially considered, authorizes the holding that an equitable conversion of the real estate into personalty was intended by the testator.

The use of the term " accumulated interest" in connection with the direction to divide may well be held to apply to an investment of personal property. All the residue and re-remainder is to be divided and it embraces real as well as personal estate. That no provision was made specifically in regard to the rents and profits, while it evinces a want of exactness in the draftsman, does not show that the intention existed to convert the real estate into personalty.

The words " divided equally" are alike applicable to real and personal property and may very appropriately be used in reference to both.

In *Burrell* v. *Baskerfield* (11 Beav. 525), which is cited and relied upon by the appellants' counsel as an authority for the division of both real and personal property as one fund, the testator by his will gave full power to his executors to collect and sell the real estate and convert his funded property into money and then to pay certain legacies and divide the whole of his property as directed, and the court held that the real estate ought to be considered as converted into personalty. It will be noticed that here was express authority and explicit directions as to the conversion of the

real estate, and hence the case at bar differs entirely from the one cited. Here no such disposition of the real estate is authorized or directed.

The direction that the estate shall be divided among the testator's grandchildren and be held by them "so distributed" may be regarded as referring to the first part of the same clause of the will in which the distribution is made of the residue and remainder of both real and personal estate, and must be interpreted in connection therewith. The real estate as well as the personal is to be divided, and conceding that the power existed in the executors to sell, it could only be exercised at the time when distribution was to take place, as the will provided—at the death of the last life annuitant.

The duty of making the final division of the real estate with the remainder of the residuary estate among those who are entitled to share in it does not create or imply a power to sell and convert it into money even at that time, and in no event is there ground for claiming that by implication a prior power of sale can be raised for the purpose of a subsequent distribution by reason of the power to distribute at the end of the life of the last life annuitant. The conversion, even if directed, might be prevented by a beneficiary, entitled t share in the division, electing to hold the land as it is. (2 Story's Eq. Jur., § 4793.) It is also an answer to the position contended for that, if the absolute power of alienation was suspended under the statute of this State for a longer period than two lives in being, as is claimed by the counsel for the respondents, an implied or express power of sale given to executors, to be exercised at any time in their discretion, does not cure the invalidity of the limitation. With no particular provision referring to a conversion of the real estate into personalty, or to any fund including the same, it would be a forced construction to hold that any portion of any of the language employed in the twenty-second article of the will contains a power which sanctions and upholds the interpretation contended for. The most that can be claimed for the language employed in this respect is that the phraseology was somewhat imperfect and not selected with that exactitude and nicety which might have been adopted.

A claim is also made that the intention to convert the real property into personalty is·shown by the language of clauses of the will earlier than the twenty-second section, and it is insisted that the testator intended to embrace remainders, after life estates and specific devises of land had failed, and that he pre-supposed that there would be a sale, although there is no specific direction to sell. Reference is made to the second, third, fourth, twelfth and eighteenth sections of the will specially, and stress is laid upon the use of the words " to be disposed of with the residue of his estate," as referring to some positive and affirmative act to be done with the specified lots and with the residue. We think that the phrases will not bear the interpretation urged, and are not inconsistent with the intention of the testator, as manifested by the twenty-second section and the whole tenor of his will, that no authority was intended to be conferred to convert the real estate into personalty and distribute what might be realized upon a sale as money merely. While some portions of the real estate might not be enjoyed by the grandchildren of the testator without a sale and distribution of the same, yet the fact that such property existed in a large estate, comprising various parcels of real property, does not conflict with the idea that the testator intended that the whole of said real estate which came within the provision of the twenty-second section of the will should be divided as therein directed. It is not unusual that large estates should embrace some species of property which alone could not be made available for the specific use of the residuary devisees and this fact does not, in the absence of any express direction, warrant the conclusion that the testator intended, without any direct provision for that purpose, a conversion of the real estate into personalty.

So far our examination has been confined to the authorities cited by the appellants' counsel, which bear generally upon the subject of a conversion of real estate into personalty by implication, and we are now brought to the consideration of the question discussed, having in view the law of this State and the authorities therein which bear upon the subject. While it

should not be overlooked that the testator was domiciled in the State of Massachusetts, and his will executed there, it should also be borne in mind that, by his will, he devised his real estate as real estate situated in the State of New York. He made no direction that it should be converted into personalty and the avails arising from the sale thereof transmitted for division under the will to the State of Massachusetts. No express provision being made in the will for a conversion of the realty into personalty, every intendment is antagonistic to such an intention. If such had been the intention, it is to be presumed that apt and appropriate language would have been used to convey it, commanding and directing that this should be done. It would not have been left to be inferred by the use of ambiguous terms, or doubtful phraseology, but the will would have contained positive provisions, indicating the testator's intention. In *White* v. *Howard* (46 N. Y. 144, 162) it was laid down by Grover, J., that "to constitute a conversion of real estate into personal, in the absence of an actual sale, it must be made the duty of, and obligatory upon, the trustees to sell it in any event. Such conversion rests upon the principle that equity considers that as done which ought to have been done." In that case the testator was a resident of the State of Connecticut, and, by his will, authorized the sale of his real estate in Connecticut, and the investment of the proceeds of the same in bonds and stocks and real estate located in the New England States or in the State of New York. A trust was created of the rest and residue for certain purposes therein named, and it was held that the will gave the trustee no power to sell the real estate of which the testator died seized, situate in New York, but that the same was to be regarded as realty, and that the validity of the testamentary disposition thereof, and the rights of those claiming by descent, must be determined by the laws of this State.

It is held in some of the reported cases that a positive direction to convert is required in order to authorize the application of the doctrine of the equitable conversion of real estate into personalty. (*Fowler* v. *Depau*, 26 Barb. 224; *Harris* v.

*Clark*, 7 N. Y. 242 ; *Neely* v. *Grantham*, 58 Penn. St. 433 ;
1 Jarm. on Wills [5th ed.], *584.) The general tendency of
the decisions is against an out-and-out conversion. (*Wright* v.
*Trustees of M. E. Church*, Hoff. Ch. *202, *208.) When
the question is, under the will, whether the devisee or the
heir failing the devisee takes an interest in land as land or as
money, the true inquiry is whether the devisor has expressed a
purpose that in the events which have happened the land shall
be converted into money. (*Smith* v. *Claxton*, 4 Mad. Ch. 484.)
This rule would require that the donee receive the proceeds as
money, otherwise it remains as real estate. The power in the
will to manage, control and reinvest does not confer upon the
executors a power of sale. While the rule laid down requires
express direction for the conversion of real estate into person-
alty, yet cases may arise where the conversion may be implied
from an express authority to sell, contained in the will, and
where such a conversion is absolutely necessary to carry out
the purpose or scheme of the testator. In *Power* v. *Cassidy*
(79 N. Y. 602 ; 35 Am. Rep. 550), cited by the appellants, the
rest and residue of the estate was divided among certain classes
of institutions, which were named, and there was an express
authority to sell the real estate, and it was held that there was
an equitable conversion of the testator's real estate into person-
alty, and it is laid down in the opinion " that the whole scope
and tenor of the will evinces that the testator intended such a
conversion, and that the estate should be divided as personal
estate."

It is manifest that the design of the testator could not have
been carried out in the case last cited without such a conver-
sion, and in this respect the case differs entirely from the one
at bar.

In *Lent* v. *Howard* (89 N. Y. 169), the will of the testator,
after giving various legacies, authorized the executors to sell
the real estate, with the exception of the homestead farm, and
to invest the balance of the estate in personal securities for the
purpose therein named, and it was held that there was a con-
version of the real estate named into personalty as of the time

of the testator's death.  It was said in the opinion by AN-
DREWS, Ch. J., that the power of sale was not in terms impera-
tive, and where the general scheme of the will requires a con-
version, the power of sale operates as a conversion, although
not in terms imperative.  In the case at bar it will be seen
that there was no express power of sale, and no provision which
implied a power, and there was nothing in the general pur-
pose of the will which required a conversion of the real estate
into personalty as was the fact in the case last cited.  To apply
the rule stated in that case, it would be necessary to imply, not
only an authority to sell, but a positive direction to convert the
real estate into money for all the purposes named in the will.

In *Gourley* v. *Campbell* (66 N. Y. 169), cited by the respond-
ents, the testator, by his will, directed his executors, after clos-
ing up his business and the payment of his debts, to place the
proceeds of his estate and "all my property, both real and
personal, at interest on bond and mortgage or otherwise, as in
their judgment they may deem best, and the proceeds, rent,
income or interest shall be employed and used for the support
and maintenance" of his wife and children and the education
of the children.  He then directed the payment of certain
legacies to his children, as provided, and finally gave all his
estate, "both real and personal," to be equally divided between
them, share and share alike, on the death of their mother.  It
was held that an intent to convert absolutely the real estate
into money did not appear and no such conversion was made
by the will.  In that case it will be seen that the proceeds of
the estate were to be placed at interest, and it was evident that
the testator designed his family should receive the benefit of
the income arising from such proceeds, but there was no ex-
plicit direction to convert the real estate into money, nor was
there any power to sell and convey the same for that purpose.
The case bears some analogy to the case at bar, and the decis-
ion is placed in part upon the ground of a want of explicit
directions showing the intention, and that there was no express
power to sell, and that it was only by implication that a power
to sell could be upheld; also that the provisions were too in-

definite and uncertain to authorize the conclusion that the executors were bound to sell in any event, and that the purpose had failed and no necessity existed for a sale. Great stress is laid in the opinion upon the effect of the provisions in the last clause of the will. In the case last cited the provisions are quite as explicit and clear as in the case at bar and the intention quite as manifest, and it tends strongly to sustain the rule that no conversion could have been intended where the will fails to show a plain intention on the part of the testator to convert the real estate into personalty.

Looking at this clause of the will, in its various parts, we think it is evident that the testator intended that the estate, real and personal, should be and remain in the hands of the executors, to be disposed of as stated, and that no design existed, at the time of its execution, that his real estate was to be converted into money and distributed as such under the provision cited. There is nothing on the face of the will which indicates that the *corpus* of this large estate was to be converted into money and reinvested until the time of final division after the death of the life annuitants and the payment of the legacies and then again reconverted into money for the purpose of distribution. It would be difficult to arrive at such a conclusion in view of the fact that many years were to elapse before a division could be had, and that a considerable portion of the estate was well invested in real property in this State, and a failure of the testator in his will to indicate any desire that such real estate which, there is reason to suppose was extremely productive, should be disposed of and the proceeds reinvested without any restriction whatever as to the character or nature of the reinvestment to be made. Surely no such intention can be inferred from the language employed or from the circumstances surrounding the testator at the time of the execution of his will. It may be added that it is by no means apparent that, if the real estate could be sold, there is any provision in the clause cited which would prevent or interfere with a reinvestment again in real estate of the proceeds for the purpose of holding the same until a final division. While the will should be sup-

ported, if it can be done upon any fair construction of its provisions, this rule has never been carried to such an extent as to hold that an out-and-out conversion is to be inferred in the absence of imperative directions, expressed or necessarily implied, to the executors to sell the real estate.

Even conceding that there was an implied power of sale contained in the will this would not render the provision of the will we are considering valid, so far as it affects the real estate in this State, because the absolute power of alienation, as will be hereinafter shown, was suspended beyond the time limited by the Revised Statutes. This question was distinctly presented in the case of *Brewer* v. *Brewer* (11 Hun, 147), where it was held that a trust which would be otherwise void as suspending the power of alienation for more than two lives in being, is not made valid because of there being given to the trustees power to sell the trust property, the proceeds of such sale remaining subject to the execution of the trust. It is urged that a distinction exists between this case and the one at bar which renders the former inapplicable here. We do not perceive any such difference as would authorize the conclusion that the case cited is to be disregarded as not in point. This decision was affirmed upon appeal to this court in 72 N. Y. 603, and we think it may be regarded as a precise adjudication of the question considered. The testator there was a resident and domiciled in the State of Massachusetts, and by the residuary clause in his will, which included real estate in the State of New York, made provision for the application of the income during the lives of three persons, for the use of certain persons therein named. At the death of the last survivor of the three, who might be living at his death, he directed a division. The will contains an express and complete power of sale to the trustee as to all the lands constituting the residue, and the proceeds of the sale were to be held upon the trusts established by the will. Conceding that there was no equitable conversion, as there was a power of sale which authorized such a conversion, the distinct question was presented whether the statute suspending the power of alienation was suspended, the same as if there was an

equitable conversion. Even if the statutes of Massachusetts in regard to perpetuities were not put in evidence in that case, the existence of this statute would still be recognized, as in comity the laws of other States are generally considered and respected by the courts of the State wherein adjudication is made. Although the decision cited was affirmed in this court without an opinion, yet, as the point was distinctly presented, it may be assumed that it was decided here.

There being no conversion of the real estate into personalty, we are brought to the consideration of the question whether the twenty-second section of the will is valid. It is claimed that the devise, by this clause, of the real estate situate in the State of New York is void by reason of the illegal suspension of the power of alienation under the Revised Statutes (1 R. S. 723, §§ 14, 15). We think that under these provisions the devise, by the twenty-second section of the will, of real estate situate in New York was void for the reason that it illegally suspended the power of alienation beyond the period fixed by law. Under the construction given to these provisions by the adjudications of the courts of this State it is difficult to see how it can be maintained that the power of alienation was not suspended in violation of the provisions of the statute cited. By the twenty-second clause of the will a future estate is created within the provisions of section 10 of 1 Revised Statutes, 722, which is limited to commence at a future day after the termination of the twelve lives which are named by the testator in his will. Until the death of all these persons no estate becomes vested in the devisees, and they are not entitled to the enjoyment of the same until that event has occurred. The right to the estate being thus held in abeyance during this period, and no estate being vested in any person by which authority was conferred to dispose of the same, it is very obvious that the power of alienation was suspended during the existence of the twelve lives named. No absolute fee could be conveyed until the death of the last life annuitant. As already shown, the executors have no authority for that purpose, and it is only upon the decease of the last surviving

life annuitant that they can make a division of the estate.   In
the mean time, as provided by the will, the estate remains un-
der their charge and control.   The grandchildren, who consti-
tute the residuary devisees, are not seized of an estate until
the death of the last life annuitant, for the reason that until
that event occurs it cannot be ascertained which of them will
be entitled to take.   It is not important to determine what
relation the executors occupy in reference to the estate until
the consummation of the event which authorizes a division of
the same.   Whether the interests committed to their charge
may be considered as in the nature of a trust or a power in
trust, or whether the annuities may be regarded as a charge
upon the lands or upon the residue of the estate disposed of by
the clause in question, is not material.   It is sufficient that a fu-
ture estate is created in which the power of alienation is abso-
lutely suspended for a period of more than two lives in being
and on that account is void and of no effect.   The statute in
this State settles the question beyond controversy that there
can be no suspension of the power of alienation beyond two
lives in being, and the reported cases are numerous which up-
hold this rule. (*Coster* v. *Lorillard*, 14 Wend. 265 ; *Hawley* v.
*James*, 16 id. 62 ; *Harris* v. *Clark*, 7 N. Y. 242 ; *Gar-
vey* v. *McDevitt*, 72 id. 556 ; *Brewer* v. *Brewer*, 11 Hun,
147 ; affirmed in 72 N. Y. 603.)   Numerous other cases sus-
tain the rule laid down in the authorities last cited, and as the
principle is well settled, it is not necessary to review the de-
cisions.

In the discussion involved as to the construction to be placed
upon the twenty-second clause of the will, we have taken into
consideration the fact that, by the statutes of the State of Mas-
sachusetts, perpetuities are allowed, and that there was no sus-
pension of the absolute power of alienation under the laws of
that State.

It is insisted by the appellants' counsel that the legacies
and annuities in the will do not suspend the power of aliena-
tion, and that at most they are but a charge upon the land in
the nature of a lien, and that the land may be sold subject to

the lien, and the learned counsel proceeds to consider whether the legacies and annuities are chargeable upon the land in this State, claiming that they are chargeable upon the entire residue, and that, if chargeable upon the land, they do not create a trust but merely a power in trust; and even if it is possible to hold that there is an express trust, it can only be maintained on the ground that they are a charge upon the land; and he also insists that the annuities themselves are not inalienable. We do not deem it necessary to consider or determine the precise legal position of the executors of the estate during the lives of the legatees and the life annuitants, or whether they hold in trust, or under a power in trust, or whether the legacies and annuities are chargeable upon the land or upon the residue of the estate, or what estate vested, or in whom, during that period of time, for the statute declares that the power of alienation shall not be suspended during so many lives by any limitation whatever, and it being clear that until the life of every annuitant is ended it cannot be determined to whom the estate will go.

It will also be observed that the real point involved in this controversy is that a future estate does not arise until the determination of the period to be settled by the duration of the life of the last of the twelve annuitants. It is not the annuities which interfere with and prevent the vesting of a future estate but the lives of the annuitants. It depends and rests entirely upon these lives, and when the last of them ceases to exist the estate receives life and vitality and springs into existence.

A further point is made to the effect that the twenty-second section does not suspend the power of alienation except as to accumulations, and that these, so far as they are unlawful, are to be rejected and have no effect upon the validity of the gift of the residue to the grandchildren. Under this point it is claimed that the estate became vested in the living grandchildren at the moment of the testator's death exclusive of any who may be subsequently born. The determination of this question must depend upon the intention of the testator and the

interpretation of the language employed in the will to be gathered from a perusal of the entire instrument. From a consideration of the various provisions of the will we think that there is no foundation for the position that the title or interest of the testator vested in the grand children who were living at the time of his death. As we have seen the estate is to be and remain under the care and control of the executors, well and safely invested until the death of the last of the twelve life annuitants, and it is only when this event occurs that the estate is to be divided and the grandchildren who are to take can be ascertained. There is an express direction here to accumulate and after that to make a division. There is no present gift, either by name, or by general designation of those who are to take, as was the case in *Manice* v. *Manice* (43 N. Y. 303), where a present gift was made directly to the sons of the testator, naming them. The testator, in the case at bar, in various clauses of his will, gave different sums and annuities to his children and grandchildren, naming them, which annuities were to be paid until the final division of his estate as provided for in the twenty-second clause of his will. The testator had thus made provision for his children and grandchildren up to the time of the death of the last life annuitant. He then, by the twenty-second clause, provided for them after that time by a disposition of the rest and residue of his estate, and directed that then, that is, at the death of the last life annuitant and not before, the said residue and remainder, which means what was left after the payment of these annuities and the legacies mentioned, should be divided as directed. The gift of this portion of his estate was made and was to take effect then and not until then. The construction placed upon the use of the word " then " is not only strictly in accordance with its definition, but comports clearly with the intention of the testator. The intention to postpone the gift being clearly manifest it must be conceded that the interests in the residuary portion of the estate did not vest at the time of the testator's death. It is no answer to the view we have taken to say that the testator could not have intended to postpone the vesting

and thus cut off the interests of the issue of grandchildren who may have died, for he has made provision by gift and annuities for these very grandchildren down to the time of the division of his residuary estate.  True the issue of the grandchildren who die are cut off, but the construction contended for would likewise cut off the after born grandchildren, and thus produce perhaps as great an inequality.  Construing the language employed in accordance with the testator's intention, we cannot resist the conclusion that the residuary devise in the will did not become vested until the final division of the estate, upon the death of the last life annuitant.  Before that period arrives there is no gift and the devise made was that of a future estate, which then and only then becomes a vested interest.  It is not important in the mean time whether the fee was vested in the heirs absolutely or subject to the rights of the executors under the will, or in the executors themselves.  It is evident that until the time of the death of the last life annuitant the donees cannot be ascertained.

The interpretation we have given is sustained by the decisions of the courts in this State in very recent cases strikingly analogous.  In *Colton* v. *Fox* (67 N. Y. 348) the testator devised the residue of his estate in trust to his executors to pay the income and profits to two brothers and sisters during their lives, and after their several deaths to divide the said residuary estate equally among their children.  The provision closed thus : " In case either of my said brothers or sisters shall die, leaving the others surviving, then the income herein intended for the one or the other so dying shall be paid to the issue or the representative of the one or the other so dying."  The question was there distinctly presented whether the estate became vested upon the death of the testator, and Church, Ch. J., cites the rule laid down by Denio, J., in *Everitt* v. *Everitt* (29 N. Y. 40) to the effect that " the leading in~ upon which the question of vesting turns is, whether th~ is immediate and the time of payment or enjoyment only ɹ poned, or is future and contingent, depending upon the be~ ficiary arriving of age, or surviving some other person or th~

like," and says, " determined by this rule the interests of the children did not vest, but they were future and contingent, depending upon surviving all the specified brothers and sisters."

In *Warner* v. *Durant* (76 N. Y. 136) FOLGER, J., states the rule applicable to this case as follows : " When the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift."

In *Smith* v. *Edwards* (88 N. Y. 92) the testator directed that $30,000 be kept invested by his executors until his youngest grandchild now born or that may hereafter be born before the final distribution of his estate should be of age.   He made various directions as to the distribution of the interest and net income, and authorized the executors to divide and distribute $10,000 of the principal, if they saw fit, between four children and grandchildren named, and also thereafter from time to time to make division and distribution of their interests and incomes between the beneficiaries named ; he also directed that in case of the death of either before payment, leaving issue, that his or her share should go to his or her children ; if without issue, then to the surviving brothers and sisters.   When his youngest grandchild born, and that may within twenty years be born, shall arrive at full age, or if a granddaughter sooner married, he directed a division of the remaining $20,000 into two equal parts, one to be divided equally between his four children and the other between the grandchildren then living, including those born after his death, with a similar provision, in case of a legatee's death, as was attached to the $10,000.   It was claimed that the legacies became vested upon the death of the testator, and this question was distinctly presented.   FINCH, J., after stating that it has been often held that if futurity is annexed to the substance of the gift, the vesting is suspended ; but where the gift is absolute and the time of payment only is postponed, the gift is not suspended but vests at once, and referring to the rule laid down as to time, in *Warner* v. *Durant* (76 N. Y. 136) and the cases

cited on the subject, proceeds to say : " In such cases, until the happening of the future event, it must necessarily remain uncertain whether a gift would exist at all, and that could not be said to have vested which was not certainly given." He further said : " Those who were to take in the prescribed event were uncertain until it happened ; might not be any one of those *in esse* at the testator's death, and might prove to be a grandchild born twenty years later." The authority last cited is directly in point, and we think decisive of the question discussed. In fact the three cases last cited bear directly upon the question and dispose of it adversely to the appellants' contention.

The appellants' counsel cites numerous authorities, mostly cases from the British reports, to sustain the position that the estate vested at the time of the testator's death. We have given due attention to these authorities, and while the cases cited may, we think, be distinguished from the case at bar, none of them hold that, when the intention is manifest that the vesting of the estate shall not take place until the expiration of the life or lives upon which it is limited, it becomes vested prior to that period. Even if any of them may be regarded as sustaining the doctrine contended for, they are adverse to the rule laid down in this State, and established in the cases last cited, and to the weight of authority, and they cannot be followed without overruling the decisions which have been cited and discussed.

Some cases are also cited by the appellants' counsel from the courts of this State in reference to the effect to be given to the use of particular words employed. (*Livingston* v. *Greene*, 52 N. Y. 118; *Embury* v. *Sheldon*, 68 id. 227; *McKinstry* v. *Sanders*, 2 Sup. Ct. T. & C. 181.) We do not discover any thing in these decisions which is adverse to the views already expressed.

There is another ground upon which the twenty-second clause of the will must be held to be inoperative and void, and that is that it is repugnant to the provisions of the Revised Statutes

which prohibited accumulations, except for the times and purposes there expressly permitted. (1 R. S. 726, §§ 37, 38.)

It follows, from the discussion had, that the final result must be that the devise of real estate in the State of New York was void, and that the heirs-at-law of the testator, by reason thereof, were seized in fee of the same and entitled to the rents and profits which have been received by the executors.

Other questions are raised by the appellants' counsel, but the conclusion arrived at renders it unnecessary to consider them.

The judgment appealed from should be affirmed, with costs of all the parties to be paid out of the estate.

All concur, except EARL, J., not voting.

Judgment affirmed.