Present — VAN BRUNT, P. J., O'BRIEN and FOLLETT, JJ.

Judgment affirmed, with costs.

---

In the Matter of the Settlement of the Accounts of JOHN S. CAMERON and Another, as Executors, etc., of JOHN CAMERON.

*Gift by will — when vested — when contingent — will, how construed.*

It is a general principle that where a gift contained in a last will and testament is absolute, and the time of payment only postponed, time not being of the substance of the gift, but relating only to the payment, the vesting of the title to the thing given is not suspended, but the payment only is deferred; but where there is no gift, but only a direction to executors or trustees to pay or divide at a future time, the vesting of the title to the subject of the gift in the beneficiary will not take place until that future time arrives.

While a court should always encourage the construction of a will which leans to the vesting of legacies, and seek diligently for evidences of such purpose and intention, yet it must construe a will and not make it over to suit its own notions of what might have been wisest.

APPEAL by Isabel Cameron, a residuary legatee under the last will of John Cameron, deceased, from a decree of the Surrogate's Court of New York county, entered in the office of the clerk of the New York County Surrogate's Court on the 13th day of June, 1893, settling and allowing the accounts of the executors of John Cameron, deceased.

The will of John Cameron was as follows:

"*First.* I direct my executors, hereinafter named, to pay all my just debts and funeral expenses as soon as may be after my decease.

"*Second.* I give and bequeath unto my dear wife, Sarah H. Cameron, her executors, administrators and assigns, all and singular my personal property of every name and nature and wheresoever situate.

"*Third.* I give and devise unto my executors, hereinafter named, and to the survivors and survivor of them, and to such one or more of them as shall qualify, all my real estate of every name and nature and wheresoever situate, in trust.

"1st. To rent the same for the best sums that can be obtained therefor, and collect the said rents, and after deducting taxes, assessments, repairs, insurance, commissions and all legal, just and proper charges out of the net proceeds thereof, to pay over the sum of one hundred and twenty-five dollars to my wife, Sarah H. Cameron, and also a like sum to each of my daughters, Mary, Isabel Y. and Hannah D., quarter-yearly on the first days of May, August, November and February of each year, and at the same times, of the residue to pay one-third thereof to each of my sons, William D., George H. and John Spencer Cameron.

"2. I do hereby authorize, empower and direct my said executors, the survivors and survivor of them, as soon as my lots and buildings known by the street numbers two hundred and sixty-six (266) and two hundred and sixty-eight (268) Bleecker street, and number four (4) Commerce street, New York city, can be sold for forty thousand dollars, or more, during the lives of my daughter Hannah D., and my son John S. Cameron, and in any event upon

the death of the survivor of them, to sell said premises for cash, or part cash and part credit, hereby giving and granting to my said executors or the survivor full power and authority to make and execute good and sufficient deed or deeds therefor to the purchaser or purchasers and receive good and sufficient bonds and mortgages upon the premises sold for part of the purchase money, and thereupon to divide the whole of such purchase money and mortgages as follows:

"My son William D. Cameron having had from me at various times certain sums of money amounting to, at least, six thousand seven hundred and fifty dollars ($6,750), and my son George H. Cameron also having had from me, at least, one thousand dollars ($1,000), it is my desire, and I do so direct, that each of the other members of my family shall first receive out of my estate amounts equal to the aforesaid sums that my sons have already had from me, and I do hereby direct my said executors, and the survivors and survivor of them, to divide the whole proceeds of said sale among my beloved wife, Sarah H. Cameron, and my beloved children, Mary, Isabel, Hannah D. and John S., share and share alike, until each of them shall have received the sum of one thousand dollars ($1,000) for each of their sole use and benefit and behoof forever; and thereafter divide the residue of said purchase money among my beloved wife, Sarah H., and my beloved children, Mary, George H., Isabel, Hannah D. and John S., share and share alike, until each shall have received out of the said balance the sum of five thousand eight hundred and fifty dollars ($5,850) for each of their sole use, benefit and behoof forever; and thereafter to divide the residue (if any) into seven equal shares and to retain and invest one of said one-seventh shares and pay over the income thereof to my beloved son William D. Cameron during his life, and after his death pay the principal sum over and equally among his children then surviving, share and share alike, and also to pay over another one-seventh share to my wife, Sarah H., and also a like one-seventh to each of my said other children, Mary, George H., Isabel, Hannah D. and John S., for their and each of their sole use, benefit and behoof forever. *If any of* my said children shall have departed this life *before me, leaving lawful issue, such issue shall take their deceased parent's share amongst them, share and share alike.*

"*Fourth.* It is my will, and I do hereby direct, that the provision made herein for my wife shall, if accepted by her, be in lieu and bar of all dower or right of dower in my estate.

"*Fifth.* In the event of the marriage of any of my daughters it is my will that they and each of them shall retain possession of their share of my estate in their own right and name, and that their husbands have no hand or voice whatever therein.

"*Sixth.* I do hereby constitute and appoint my wife, Sarah H. Cameron, and my sons George H. Cameron and John S. Cameron, and my daughter Hannah D. Cameron, all of the city of New York, executors of this my last will and testament, hereby revoking all other and former wills and codicils by me at any time heretofore made."

*Robert C. Taylor*, for the appellant.

*Schuyler C. Carlton*, for the respondents.

O'BRIEN, J.:

The single question for our determination is, whether the legacies given by the will were vested or contingent. In the leading case of *Warner* v. *Durant* (76 N. Y. 136) it is said: "It is a general principle that where the gift is absolute, and the time of payment only postponed, time not being of the substance of the gift but relating only to the payment, does not suspend the gift, but merely defers the payment. * * * Another rule is to be noticed. It is this: Where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives."

In *Smith* v. *Edwards* (88 N. Y. 109) it is said: "While we are to encourage always a construction which leans to the vesting of legacies, and seek diligently for evidences of such purpose and intention, we must still construe the will and not make it over to suit our own notions of what might have been wisest."

This tendency to seek diligently for evidence in order that the legacy may be held to be vested, rather than contingent, in cases of doubt, explains many of the cases, which are really exceptions to the general rule laid down in *Warner* v. *Durant* (*supra*), which, as shown from the citation, is authority for the view that where the

only gift is in a direction to pay or distribute at a future time, without words of present gift, the estate will not vest until the coming of that future time. Thus, in *Vanderpoel* v. *Loew* (112 N. Y. 167) the circumstance that the whole income of each share was given to the person to whom the share itself was given, was held controlling as denoting an intention to vest a remainder. So, in *Goebel* v. *Wolf* (113 N. Y. 405), the fact that the personalty was vested was regarded as throwing light upon the testator's intention to have the realty also vest.

Applying the general rule laid down in *Warner* v. *Durant*, viewed in the light of the exceptions founded on the cases cited, it seems to us reasonably free from doubt that the legacies were contingent, and that the circumstances which were resorted to in those cases to vest the interests are not here present. From the will it will be seen that all the personalty is given outright and absolutely to the wife. So far as the rents are concerned, or the income, the amounts which the persons named are to take are unequal, though the desire of equalizing in the final distribution the interests of all parties in the property is apparent.

Moreover, the realty, unlike the personalty, is devised to the executors in trust, with direction until the same is sold to pay over the income in equal amounts to the widow and children; and in the event of the property reaching a certain value during the lives of two of his children, but in any event upon the death of the survivor of them, the executors are authorized and directed to sell the premises for cash, or part cash and part credit; and then follows what we must regard as significant language used by the testator, that they are "*thereupon* to divide the whole of such purchase money and mortgages as follows." This is succeeded by the provisions in which the share each is to receive is indicated; and at the end of these provisions it will be noticed that, while nothing is said about the wife's share, there is a provision to the effect that "if any of my said children shall have departed this life before me, leaving lawful issue, such issue shall take their deceased parent's share amongst them, share and share alike."

The intent, we think, from the whole context of the will was, that the interest or share of each one was to be determined by the situa-

tion when at the period in the future designated the property should be sold and the division made. As suggested by appellant, we find here no words of present gift, and the whole scheme of distribution is introduced by the word "thereupon," which, it is urged, should here be given the same force and effect as and held tantamount to the word "then;" which, as shown, has been many times adjudicated by the Court of Appeals to be the pivot upon which the decision of that court turned. (*Hobson* v. *Hale*, 95 N. Y. 588; *Shipman* v. *Rollins*, 98 id. 311, 324; *Quackenbos* v. *Kingsland*, 102 id. 128.)

Giving due weight, therefore, to the well-settled rule that should incline to a vesting rather than a contingency, we fail to find in this will language which, under the cases to which we have adverted, could be regarded as sufficient to distinguish it from the leading case already referred to of *Warner* v. *Durant*. And thinking as we do that the general rule laid down in that case should control here, our conclusion is that the legacies were contingent, and that the surrogate was wrong in his construction that they were vested.

The decree, therefore, should be reversed and the matter remitted to the surrogate for distribution accordingly.

VAN BRUNT, P. J., and PARKER, J., concurred.

Order reversed and case remitted to surrogate.