## In re O'DAY'S ESTATE.

(Surrogate's Court, New York County.   December 3, 1914.)

EXECUTORS AND ADMINISTRATORS (§ 180*) — SETTLEMENT OF ESTATES — AC-
COUNTING—COMPENSATION FOR SPECIAL GUARDIAN.

The Surrogates' Law, enacting, inter alia, Code Civ. Proc. § 2748, pro-
viding that a special guardian for an infant shall receive a reasonable
compensation for his services, to be fixed by the surrogate, payable from
the estate, or from the interest of the ward therein, or from both, as the
surrogate may direct, does not authorize the surrogate to allow to a spe-
cial guardian of an infant having no present interest in the estate com-
pensation payable out of the estate in an accounting proceeding without
contest, but may allow to the special guardian costs payable out of the
estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. §§ 655, 671–680; Dec. Dig. § 180.*]

In an accounting proceeding of the estate of Daniel O'Day. Al-
lowance to special guardian as costs, but no allowance for compensa-
tion.

Hatch & Sheehan, of New York City, for trustee.
Parker & Aaron, of New York City, for Eliza O'Day.

FOWLER, S.   In an accounting proceeding where there is no con-
test the parties ask, in behalf of a special guardian whose infants have
no present interest in the estate in the hands of the accountants, my
consent that compensation be allowed to him for the guardian's serv-
ices payable out of the principal of the estate, which belongs to others
and in which his infants have no present interest.   This application is
sought to be justified by the new section 2748 (C. C. P.) enacted by
the Surrogates' Law of 1914 as follows:

"A special guardian for an infant or incompetent shall receive a reasonable
compensation for his services to be fixed by the surrogate, payable from the
estate or fund, or from the interest of the ward therein or from both, as the
surrogate may direct."

I have often looked at that section since its enactment, and the more
I look at it the more I distrust a construction of it which would in-
vest me with a general power to grant compensation in my own arbi-
trary discretion and at no fixed rate out of estates belonging to others
in the hands of executors or testamentary trustees.   I distrust such
assertion of the surrogate's power, and I distrust such a construction
of the section as would give the surrogate such a plenary power.   Such
a construction does not seem to me consistent with the public interest,
or with precedent or principle, or with the responsibilities of a Sur-
rogate's Court situated in such an exceptionally rich community as
this.   I know very well the dangers of such an arbitrary power, not
perhaps so much to large estates, which are able to protect themselves
by costly contentions, but to the countless poorer estates distributable
to helpless children or widows, where the imposition of a relatively
large allowance by me would often be an irremediable wrong.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This new section is in terms contrary to the long-settled policy of this state. I do not mean to impute to the Legislature the slightest intention of enacting a mischief, but I feel bound to inquire what they must be taken to have meant by that new section, and how it ought to be construed so as to fit it harmoniously into the settled jurisprudence of this state. No injustice can be presumed to have been intended by the Legislature. What, then, does the new section intend?

In the first place, it will be observed that the new section contains no real limitation, on its face, on the amount of the proposed allowance. It does not read "compensation in no case to exceed $50,000, or $500, or $50 even." In a vast estate I might be persuaded to estimate the allowance to be made to the guardian at too large an amount, or in another instance at a sum so large as to exhaust the estate here to be distributed. The statute would not, in terms, forbid this. Under similar conditions that very eminent man, Mr. Bradford, who sat in this seat, protested against a construction of a contemporaneous statute of this state which left to the surrogate the power of fixing costs without reference to any standard in the way of a fee bill. To give the law before him consistency with justice, Mr. Bradford read into the act a superseded fee bill of another court. Western v. Romaine, 1 Bradf. Sur. at page 38. This was going a long way, but his construction was followed. Willcox v. Smith, 26 Barb. 329, 330. This wise course prevented such scandalous practices as those animadverted on in Matter of Stevens, 114 App. Div. 607, 614, 99 N. Y. Supp. 1070, affirmed 188 N. Y. 589, 81 N. E. 1176.

It must be recognized that before the late Surrogates' Law of 1914 (Laws 1914, c. 443) the Court of Appeals had distinctly denied that a Surrogate's Court had power to award a special guardian compensation out of the general estate. Matter of Robinson, 160 N. Y. 448, 452, 55 N. E. 4; Matter of Will of Budlong, 100 N. Y. 203, 205, 3 N. E. 334; Matter of Holden, 126 N. Y. 589, 27 N. E. 1063; Re Farmers' Loan & Trust Co., 49 App. Div. 1, 63 N. Y. Supp. 227. The Legislature is to be presumed to have known this, and also that it was a general principle of law in this state that costs and allowances of guardians could not be made payable out of other people's property. Gott v. Cook, 7 Paige, at page 544. On what theory such a sudden departure from precedent was justified I am not informed.

There has been, even since the Revised Statutes, a distinction between the allowance of costs to guardians payable out of the estate and compensation to guardians payable only out of the infant's share. Section 10, 2 R. S. p. 223; Matter of Will of Budlong, 100 N. Y. at page 205, 3 N. E. 334. It is now claimed, not particularly in this matter, as the parties here acquiesce in my conclusion, that the new section of the Surrogates' Law of 1914 (section 2748, C. C. P.) obliterates all this distinction, and that the surrogate may now allow to the special guardian compensation in his discretion out of the property of others than the infant represented by the special guardian. I doubt, since looking into it, if this construction can be taken to express the intention of the Legislature. The statute is to be read as a whole. Section 2561 of the former Code of 1913, it will be ob-

served, is re-enacted by the new Surrogates' Law as section 2746 of the Code of 1914. If Surrogate Bradford could read as he did an old fee bill into an indefinite act relative to costs to be granted by the surrogate, why is it not possible to read into the present sections 2748, 2746, C. C. P., in which the Legislature defines what is "reasonable compensation?" So doing would prevent injustice in any future case, and make the new section 2748 consistent with precedent and with the wise policy heretofore pursued in this state.

But if the construction just denoted shall be regarded as forced, there is another consideration which cannot be overlooked, although I am reluctant in a court of first instance to go into a question of legislative power, for the reasons I stated in my judgment in Matter of Thornburgh, 72 Misc. Rep. at page 621, 132 N. Y. Supp. 268. The consideration to which I allude is the power of the Legislature to enact that provision of section 2748, C. C. P., which is said to enable the surrogate to compensate a guardian of infants at any amount he fixes out of property belonging to others than the infants themselves. This legislation, it is asserted, enables the surrogate to transfer the legal title of property from one person to whom it belongs to another to whom it does not belong. Has the Legislature such a power? Certainly it is open to doubt. In the Estate of David Stevenson, 150 N. Y. Supp. 423, I expressed my own doubt on the legislative power. There is no analogy between the power of a court of equity to grant allowances out of a res in court and the surrogate's power so to do out of an estate not in court. The chancery power was attained after a long struggle, and was justified on the theory of the protection of the res in court, or on the theory that the legal title of the res was while in transit really vested in the court of equity. There is no analogy between that state of facts and this. Here an estate of a deceased person is not in the Surrogate's Court, but in the personal representatives. It is here not for protection pendente lite over a controverted title, but it is here for distribution in accordance with a last will or the statute of distributions. The surrogate has no judicial title to such property, although in legal theory he is sometimes regarded officially as chief executor or chief administrator of all estates, because he is the source of all letters testamentary or of administration.

It is quite true that at present an accounting proceeding in this court may have reference to the former equity jurisdiction conferred on this court, and that the accounting proceeding now bears some likeness to a former administration suit in chancery. I briefly referred to this point in Matter of Watson, 86 Misc. Rep. 594, 595, 148 N. Y. Supp. 902. But I am unwilling to think that the theory prevailing in chancery, that in an administration suit the fund is in court, has any relevancy to conditions in a court of probate. Much depends on the theory on which the several courts act in regard to the situation of the legal title.

The old common-law theory of legal title is not, I fear, always sufficiently guarded in our country, and there is a disposition of late years observable among us to regard all our courts as having some extended and mysterious power over legal titles whenever property is directly

or indirectly the subject-matter of litigation. Thus a court's appointment of a new trustee in the place of an old trustee or a new official assignee is often regarded by us in this country as per se working a transubstantiation of the legal title from one to the other appointee, without the necessity of any conveyance of the legal title from the outgoing trustee to the incoming trustee. This theory I have always ventured to regard as dangerous, and calculated to magnify unduly the power of the state and its courts over private property. This dangerous theory is emphasized by a practice which would even regard a court's decree directing a conveyance as the equivalent of a conveyance from a trustee to a cestui que trust. I referred to this subject in my judgment in Matter of Zerega, 81 Misc. Rep. at page 122, 142 N. Y. Supp. 144, affirmed on appeal. The theory just noticed may be urged to be closely allied to the legislative grant (if grant it be) of a power to a surrogate to make allowances to one party out of the property of other parties to a legal contention. If it is so allied, then I have no hesitation in saying that such precedents are to my mind no justification of the power.

The Legislature has not the power to authorize the surrogates to grant allowances to one party out of the private property of other parties. In Westervelt v. Gregg, 12 N. Y. 202, it was held that the Legislature had no power to take away vested rights and transfer them to another. Matter of Hatch, 43 N. Y. Super. Ct. 89, reads to the same point.

I recognize that I have stated only my own opinion, but I shall act on it until I am advised by authority of my superiors that I am in error in my construction, and then the responsibility for the results will no longer be mine. There having been no contest, the special guardian is entitled to $25 costs, payable out of the estate, but to no allowance, as his infants receive nothing out of which it can be made payable.