Matter of the Petition of Frederick F. Fitter, Christopher Fitter, Jr., and Henry Krogmann, as Sole Acting Executors of and Trustees under the Last Will and Testament of John H. Krogmann, Deceased, to Render and Settle Their Account as Such Executors and Trustees.

(Surrogate's Court, Kings County, November, 1916.*)

Guardians — special — services of — executors and administrators — Code Civ. Pro. § 2748.

Under section 2748 of the Code of Civil Procedure a special guardian, upon the judicial settlement of the account of executors and trustees, may be granted a reasonable compensation for his services, to be fixed by the surrogate and payable from the general funds of the estate.

Proceedings upon judicial settlement of the account of executors and trustees.

---

* Received too late for publication in proper place.—[Repr.

Otto F. Struse, for accountants.

Irving H. Bookman, for Clarence Krogmann.

James M. Gray, special guardian for infants John H. W. Krogmann and Dorothy A. Krogmann.

KETCHAM, S. Upon the settlement of the decree the special guardian asks for a substantial compensation, payable out of the estate. A beneficiary under the will claims that such guardian's allowance should be wholly paid from the shares of his wards.

· It is argued by the objecting legatee that " he has not received benefits of the services of the said special guardian of the infants, and should not, therefore, be taxed or charged therefor," and that if " compelled to share in the expenses of the special guardian * * * this would mean that he would be paying the expense of a representative of hostile interests."

The suggestion rests in error as to the relation of the special guardian to the subject-matter of the cause and to the parties concerned therein, and it could be dismissed without a second thought if it did not coincide with the views of Mr. Surrogate Fowler in the case to be cited *infra*. A version of the law which this court would be at first inclined to reject, by whomever expressed, should not be finally disregarded without respectful examination, if it be found in a judicial opinion.

The law since September 1, 1914, has been as follows: "A special guardian for an infant or incompetent shall receive a reasonable compensation for his services to be fixed by the surrogate, payable from the estate or fund or from the interest of the ward therein, or from both in such proportion as the surrogate may direct." Code Civ. Pro. § 2748.

In *Matter of O'Day*, 88 Misc. Rep. 408, Mr. Surro-

Surrogate's Court, Kings County, November, 1916. [Vol. 100.

gate Fowler doubted that the section quoted was within the legislative power, and founded his distrust of the enactment upon a conception that it provided for the payment to a guardian of infants out of property belonging to others than the infant themselves. He tested the section by the principle asserted by him that " costs and allowances of guardians could not be made payable out of other people's property." Of the section in point, he said: " This legislation, it is asserted, enables the surrogate to transfer the legal title of property from one person to whom it belongs to another to whom it does not belong."

In application to this section he used the words: " The legislature has not the power to authorize the surrogates to grant allowances to one party out of the private property of other parties."

Of the case before the learned surrogate, it was said by him that the infants concerned had no present interest in the estate in the hands of the accountants, but if, as the opinion conceded, they were proper parties, and the services of the guardian were necessary, the rule which should have been there applied would seem to be the same as in a case where compensation might be sought from the general estate by a guardian whose wards had but a fractional interest. In one instance, no less or more than in the other, the compensation would be paid in some part from other people's money.

To one who rigorously follows the conclusions of another court, of equal or greater rank, when they are found essential to the decision in which the conclusions are announced, it is significant that the question discussed in the opinion cited did not exist, for the learned surrogate was assured while he was writing " that all parties acquiesced in his conclusion."

It cannot be that the direction for the payment of the guardian's allowance involves the disposition of other people's money. The special guardian is imposed upon a proceeding, because it cannot be advanced to a decretal result without his services. Those concerned in the possible distribution have nothing except the hope of a share in the remnant of the estate after the special guardian is paid. So far from being a payment out of other people's property, the special guardian's allowance, both before and after adjustment, is a sum to which the beneficiaries are strangers. They never had it and never could have had it. It is inconceivable that either it or a part of the fund equal to it was ever theirs.

This inevitable theory is confessed in the universal recognition that some compensation, however modest, must be paid to the guardian if he has rendered faithful service, and the allowance which was made in the case cited of sums limited to statutory costs involves this concession.

In kind, though not in extent, as great an invasion of the " principal of the estate which belongs to others," of " the property belonging to others than the infant themselves," and of " the private property of other parties " would be wrought by a small allowance as by a large one.

Like costs, referees' fees, appraisers' fees or stenographers' fees, the fees of the special guardian are primarily a burden of the estate.

No circumstance is shown in this case to exonerate the general fund from this normal liability, and the guardian's compensation will be charged accordingly.

The amount of such compensation remains. It is not denied that the services of the special guardian were reasonably worth a sum in excess of statutory costs, and the surrogates of the state have generally

Surrogate's Court, Kings County, November, 1916.   [Vol. 100.

thought that the Code, as amended in section 2748, not only warrants, but directs, in cases such as the present, that the special guardian shall receive from the general estate a sum actually equal to the value of his labors, and that the estimate of such sum is not to be controlled by the provisions relative to costs.

So far as the opinion in *Matter of O'Day, supra,* is authority, either persuasive or controlling, to the contrary, it has been overruled by its author.   With that largeness of mind which is the rarest but most gracious ornament of our judicial literature, Mr. Surrogate Fowler has cast off the restraints of his earlier convictions, published in the cited case, and now asserts his right and duty to grant to special guardians, who have rendered services which have enured both to the general estate and to the interests of their wards, allowances substantially in excess of statutory costs, and made payable from the estate alone.

In a modesty which, perhaps, takes too little heed of the reach and sanction which are so generally accorded to his utterances, the learned judge has refrained from giving to the profession any intimation of the readjustment of his judgment beyond the mere acts which evidence its abandonment.   Nevertheless, the result is that no vestige of authority remains for the denial to a special guardian of such sum as shall be found, upon careful inquiry, to be the fair value of his services, nor is there longer any doubt that in proper circumstances such sum may be charged upon the general estate.

The allowance in the case at bar will be $500.

Decreed accordingly.