In the Matter of the Application of LAWRENCE COPLEY THAW, an Infant over the Age of Fourteen Years, to Obtain a Determination of the Validity, Construction and Effect of a Disposition of Property Contained in the Will of FRIEDA MARSH YOUNG, Deceased.

FRANK G. TURNER, as Executor of and Trustee under the Last Will and Testament of FRIEDA MARSH YOUNG, Deceased, Appellant; PAUL BERRY SPARRELL and Others, Appellants, Respondents.

First Department, February 15, 1918.

Will — trust — unlawful suspension of power of alienation — invalid trust provision — Code of Civil Procedure, section 2748, construed — allowances to special guardians — discretion of surrogate.

Where a testatrix left one-half of her estate to her executor in trust to pay certain sums from the income to three friends for their lives, and provided that the principal should be held by her executor so long as any of the three friends should be living, and that upon the death of all three it should become a part of a trust fund created for the benefit of her son, and it appeared that the other one-half of her estate had been placed in trust for the life of her son for his benefit with remainder at his death to his issue and descendants, if any, and if he should leave none then to certain designated persons, the gifts to the friends are invalid as unlawfully suspending the power of alienation. The provision cannot be construed as creating three separate funds, one for the benefit of each so as to make the disposition valid.

There remains, however, a valid trust for the life of the son of the testatrix, which will include the whole residuary estate.

Section 2748 of the Code of Civil Procedure, added by chapter 443 of the Laws of 1914, should be so construed as to limit allowances to special guardians payable out of the estate, either in whole or in part to cases in which the services of the guardian are shown to be of value not only to the immediate ward or wards, but also to the owners of the estate or fund out of whose pockets the allowance is to be taken.

Since the discretion vested in the surrogate in regard to allowances to special guardians is extensive, its exercise should be correspondingly conservative, and the amounts to be awarded should depend at least as much upon the value of the services rendered as upon the size of the estate.

Whatever be the extent of the discretion thus vested in the first instance in the surrogate, it is a legal and not an arbitrary discretion and is subject to review.

Allowance to the special guardian for the infant petitioner, in a proceeding brought in the Surrogate's Court under section 2615 of the Code of Civil Procedure to obtain an adjudication as to the validity of a will, approved.

Infants, holding vested remainders subject to be divested if the life beneficiary should leave issue, have such a present interest in the estate as to justify the granting of a reasonable allowance to their special guardian.

Allowance to such a guardian held to be unreasonably large under the circumstances.

APPEAL by Frank G. Turner, as executor and trustee, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 30th day of August, 1917.

Separate appeals by Paul Berry Sparrell and others from parts of said decree.

*Selden Bacon* of counsel [*Duer, Strong & Whitehead,* attorneys], for the appellant Frank G. Turner, as trustee and executor, etc.

*Sidney Harris,* special guardian for Sparrell infants, appellants, respondents.

*John J. Hynes,* special guardian for Tanner infants, appellants, respondents.

*Charles S. Aronstam* of counsel [*Manton Marks* with him on the brief], for Harriet S. Gelder, one of the beneficiaries,

*R. B. Knowles* of counsel [*Taylor, Knowles & Hack,* attorneys], for the petitioner, respondent.

*David H. Taylor,* special guardian for Lawrence Copley Thaw.

SCOTT, J.:

This is a proceeding brought in the Surrogate's Court, under section 2615 of the Code of Civil Procedure, by Lawrence Copley Thaw, an infant, and the only child and heir at law of Frieda Marsh Young, deceased, to obtain an adjudication as to the validity of one of the clauses of the will of said decedent. The appellants are Frank G. Turner, the executor and trustee named in the will, the special guardians who appear for certain infants remotely interested in sustaining the will, and the petitioner who by his appeal calls in question only the allowances made by the surrogate to the two special guardians. The clause in the will sought to be construed, and which by the decree appealed from is declared to be invalid, is numbered 14 and reads as follows:

" XIV. One half of all the rest, residue, and remainder of my estate of whatsoever kind and wheresoever situate, I give, devise and bequeath to my executor, Frank G. Turner, in trust nevertheless, to receive the rents, issues, profits and income and after deducting all lawful necessary expenses and charges to dispose of the same as follows: To pay the sum of One Thousand ($1,000) Dollars per year, in quarterly payments, to my friend Harriet Gelder, wife of Josef E. Gelder, during the term of her natural life.   To pay the sum of One thousand ($1,000) Dollars per year, in quarterly payments to my friend Elizabeth B. Sparrell, wife of Franz Josef Sparrell during the term of her natural life.   To pay the sum of One Thousand ($1,000) Dollars per year, in quarterly payments to my friend Ada Deane Tanner, wife of Denis Deane Tanner, during the term of her natural life.   If there should be a deficiency in the amount required to make such payments, during any one year, the amount to be paid to such persons for such year, shall be reduced *pro rata*, so the amount to be paid them in any one year shall not exceed the income for that year.   If there should be an excess during any one year over the amount to be paid to the above named three persons, such excess shall

go to my said executor and trustee as a part of the trust fund created for the benefit of my son Lawrence Copley Thaw, as hereinafter provided in this will, for the uses and purposes, and with and subject to the powers and limitations expressed and declared of and concerning such trust fund. The principal of this half of my residuary estate shall be held by my executor and trustee so long as any one of the above named three friends shall be living; and upon the death of all three such principal shall become a part of the trust fund created for the benefit of my son Lawrence Copley Thaw, as hereinafter provided in this will, for the uses and purposes, and with and subject to the powers and limitations expressed and declared of and concerning such trust fund."

The specific objection to this clause, and which as the surrogate has held invalidates the whole clause, is that it postpones the distribution of one-half of the residuary estate and its absolute ownership for more than two lives, to wit, for the lives of the three annuitants, as well as for the life of the petitioner.

To fully comprehend the effect of the 14th clause we must consider the 15th which disposes of the other one-half of the residuary estate. By that clause the testatrix gives such other half to her executor as trustee to hold during the life of the petitioner, paying the income to him or applying it to his use, and at his death to pay over the capital sum to his issue and descendants, if any, and if he leave none then to certain persons named in the will, or to their respective heirs and next of kin.

So it appears that the general scheme of the will was that the petitioner should be the ultimate beneficiary for life of the whole of the residuary estate, subject as to one-half of said estate to the payments directed to be made to the annuitants named in the 14th clause. If the sums directed to be paid annually to the three persons named in the 14th clause were strictly speaking annuities, or if the clause could be construed as creating three separate funds, one for the benefit of each, so that the fund held for the benefit of any one would be released upon the death of that one, it would be possible to save the clause in its entirety. But unfortunately for the persons sought to be benefited this cannot be done. The sums to be paid to them are not given absolutely so as to be a

charge upon the trust fund itself, but are expressly limited to income (*Davis* v. *MacMahon,* 161 App. Div. 458; affd., 214 N. Y. 614), and the testatrix has expressly provided that " The principal of this half of my residuary estate shall be held by my executor and trustee so long as any one of the above named three friends shall be living," and it is only after the death of the last survivor of the three that the principal is to become a part of the trust fund created by the 14th clause for the benefit of petitioner. The provision for the three friends is thus brought within the rule stated in *Leach* v. *Godwin* (198 N. Y. 35, 41) as follows: " In cases where a trust for the benefit of several persons is held in one fund it is necessary for the purpose of holding that they constitute separate and independent trusts that each part of the principal fund should be liberated from the trust fund upon the termination of the lives in being at the death of the testator for which the trust is held and also to find from within the will itself that such was the intention of the testator. * * *." To the same effect is *Davis* v. *MacMahon* (*supra*).

We are, therefore, unable to see how the trust provisions in favor of the three friends of the testatrix mentioned in the 14th clause of her will can be saved. The fact that they are invalid does not, however, establish the further proposition that as to this half of the residuary estate the testatrix died intestate, as the learned surrogate has held, for if those provisions be deleted there will remain a perfectly valid trust for the life of the petitioner, and what was evidently the principal and controlling purpose of the executrix will be fully carried out, to wit, that her whole residuary estate should be held in trust for her son during his lifetime, and at his death be distributed as the will directs. The authority for so dealing with the will is ample. The rule in such cases was thus expressed in *Kalish* v. *Kalish* (166 N. Y. 368): " It is axiomatic that courts cannot make new wills for testators who have failed to make valid wills for themselves. While recognizing the force of this truth, courts have from the earliest times been compelled to choose between the alternatives of setting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule which is now firmly established in this State, that when the several parts

of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be." There are many cases in the books to the same effect. Some of them are collated by Judge CHASE, writing for the Court of Appeals in *Matter of Hitchcock* (222 N. Y. 57), the latest authority upon the subject. In that case it is said: "The principle is now well settled that the courts lean in favor of the preservation of such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator."

Applying this rule to the present case the general intent of the testatrix, which was to make her son and his descendants the ultimate beneficiaries of her whole residuary estate will be preserved by declaring invalid only the provision made in the 14th clause for the benefit of the three friends named therein, and the decree appealed from must be modified to this extent.

The petitioner is an infant and was represented by a special guardian. Certain infants contingently interested in the remainder after the death of the life beneficiary, providing their respective parents be not then living, were also represented by special guardians, two in number. To all of these special guardians were given allowances in substantial amounts payable out of the estate. By cross-appeals these guardians raise a question as to the propriety of these several allowances, the special guardians of the petitioner protesting against the allowances to the special guardians of the infants, and the latter protesting against the allowance to the former.

As to the allowance to the special guardian for the petitioner we see no ground for criticism. While the petitioner will not obtain all the advantage from the proceeding for which his special guardian contended, yet he will obtain a substantial advantage from the elimination of the provision for the benefit of the three friends of the testatrix named in the 14th clause of the will, and the allowance which seems

under all the circumstances to be reasonable will in effect be a charge against the petitioner's beneficial interest in the estate.

As to the special guardian for the other infants a different question is presented. The infants who are represented by these guardians have no present interest in the estate. They are children of two of the persons mentioned in the will to whom the estate is to be distributed in case the son of the testatrix shall die without leaving issue or descendants. To each of these guardians the surrogate has given an allowance of $1,000 payable out of the estate.

It is settled that prior to the passage of chapter 443 of the Laws of 1914, known as the Surrogate's Code, these allowances would have been unlawful. (*Matter of Robinson, No. 2,* 40 App. Div. 30; affd., 160 N. Y. 448; *Matter of Holden,* 126 id. 589; *Matter of Budlong,* 100 id. 203; *Matter of Farmers' Loan & Trust Company,* 49 App. Div. 1.)

In *Matter of Robinson* (*supra*) the Court of Appeals said: " No part of the infant's estate was before the surrogate, and there was neither property nor money absolutely belonging to them out of which he could direct payment to be made. They had no present right to any portion of the estate of the decedent. They might never have any such right, and if it should finally come to them it might be only after the lapse of many years. * * * We have reached the conclusion that a Surrogate's Court has no power to award a special guardian, even when appointed on its own motion to represent an infant party to an executor's accounting, any compensation for his services out of the general estate of the decedent in excess of the costs authorized by the Code of Civil Procedure."

It is claimed, however, that the power thus denied to the Surrogate's Court has now been conferred upon it by section 2748 of the Code of Civil Procedure as added thereto by the so-called Surrogate's Code. That section reads as follows: " A special guardian for an infant or incompetent shall receive a reasonable compensation for his services to be fixed by the surrogate, payable from the estate or fund, or from the interest of the ward therein, or from both in such proportion as the surrogate may direct."

This section has been the subject of no little judicial dis-

cussion. Mr. Surrogate FOWLER, standing alone in this matter so far as we are aware, has condemned the section in no measured terms and has even questioned its constitutional validity. (*Matter of O'Day*, 88 Misc. Rep. 408.) On the other hand, Mr. Surrogate KETCHAM has, with equally vigorous insistance, upheld both the validity of the amendment and the right of the Surrogate's Court under it, to make an allowance to a special guardian out of the *corpus* of an estate even where his ward has no present or vested interest in such *corpus*. (*Matter of Fitter*, 100 Misc. Rep. 214.)

The criticism upon constitutional grounds by Surrogate FOWLER is interesting, and if it were necessary to determine the question much might be said in favor of his view. As he points out, the power apparently intended to be conferred upon Surrogates' Courts in the matter of allowances to special guardians is not only a reversal of the long-established policy of the State, but absolutely unlimited as to amount, thus conferring upon these courts a very much wider discretion than is vested in the Supreme Court, so that it is easy to conceive of a case in which an estate of moderate size might be seriously depleted if any surrogate should see fit to exercise his discretion unwisely or recklessly. The effect of the amendment, as it is sought to be construed, is, in the language of the Court of Appeals (*Matter of Budlong, supra*), to take the amount of the allowances to special guardians " from those who are entitled to the estate " and transfer it " to the pockets of the special guardian."

A critical examination of the section raises much doubt whether or not the Legislature intended to go so far as is claimed by the special guardians in this case. It is doubtless true that there have been cases in the past, and may be cases in the future, in which the services rendered by a special guardian are valuable not alone to his immediate wards, but also to the estate as a whole, and in such cases the limitation upon the power to grant allowances, which obtained before 1914, might prevent his receipt of reasonable and proper compensation. (See *Matter of Ludlow*, N. Y. L. J., July 27, 1899, per VARNUM, S.) The section of the Code which we are now considering may reasonably be construed as intended to apply to such cases. The language is that the allowances shall

be " payable from the estate or fund, or from the interest of the ward therein, or from both in such proportion as the surrogate may direct." In our opinion this section should be so construed as to limit allowances to special guardians payable out of the estate, either in whole or in part, to cases in which the services of the guardian are shown to be of value not only to the immediate ward or wards, but also to the owners of the estate or fund out of whose pockets the allowance is to be taken. In any case since the discretion vested in the surrogate in this regard is so very wide, its exercise should be correspondingly conservative, and the amounts to be awarded should depend at least as much upon the value of the services rendered as upon the size of the estate. Whatever be the extent of the discretion thus vested in the first instance in the surrogate, it is a legal and not an arbitrary discretion and is subject to review. In the present case the two sets of infants had identically the same contingent interests in the estate, and one guardian could have represented them as well as two. They hold vested remainders, subject to be divested if the life beneficiary should leave issue. This, we think, gives them such a present interest in the estate as to justify the granting of a reasonable allowance to their special guardian. We think, however, that the allowances given to the guardian by the decree appealed from are far from reasonable. There were no disputed questions of fact in the case, and no account to be examined. There was presented only a question of law which was neither novel, abstruse nor complicated. That construction of the will which might be of ultimate advantage to the infants was ably and fully presented and argued by counsel for the executor and trustee, and by counsel for those to whom the estate would go if the life beneficiary should presently die without issue or descendants. Under these circumstances, we can see no warrant for the very generous allowances which have been awarded to the special guardians payable out of the estate.

The decree, therefore, in addition to the modification already referred to as to the construction of the 14th clause, should be further modified by reducing the allowances to the special guardians, other than the special guardian for the petitioner, to $250 each, and awarding to such special guardians their

taxable costs payable out of the estate. The allowance to the special guardian for the infant petitioner should be paid out of the income of the trust fund. As so modified, the decree should be affirmed, with costs to all parties appearing in this court and filing briefs, payable out of the estate.

LAUGHLIN, DOWLING, SMITH and DAVIS, JJ., concurred.

Decree modified as stated in opinion, and as modified affirmed, with costs to all parties appearing and filing briefs in this court, payable out of the estate. Order to be settled on notice.