CLARENCE M. WOOLLEY, ROLAND J. HAMILTON and FRANK M. PETERS, as Executors and Trustees under the Last Will and Testament of JOHN B. PIERCE, Deceased, Plaintiffs, *v.* CARRIE ELEANOR HUTCHINS et al., Defendants.

(Supreme Court, Erie Trial Term, December, 1920.)

Wills — construction of — how validity of a testamentary disposition of real estate in this state by a non-resident testator is controlled — trusts — suspension of power of alienation — corporations — power of sale — annuities — devise — vesting — gifts — Decedent Estate Law, §§ 44, 45, 47 — Real Property Law, §§ 42, 61, 97, 99 — Code Civ. Pro. § 1836-a.

The validity of a testamentary disposition of real estate in this state by a non-resident testator is controlled by section 47 of the Decedent Estate Law. (P. 13.)

By a trust created by the will of a non-resident testator who left very little property other than common and preferred stock in a corporation and certain unproductive real estate in this state of the value of $150,000, there was given outright to certain designated employees of the corporation, divided into classes, the amount of property which the testator intended they should receive at his death, with a *proviso* that the right of any employee to participate in the distribution of the principal, which was not to be made until after the lapse of ten years even though the three life beneficiaries died long prior thereto, was contingent upon such employees remaining in good standing in the active employment of the company, its successors and assigns, until the expiration of the trust period. It was further provided that in default of such continued employment, the benefit intended for such employees should end and " be treated as if never conferred " and the testator left it entirely to the officers of the corporation to terminate the employment of any employee and made the action of said officers with respect thereto as final and conclusive as a voluntary relinquishment of employment. The trustees, being unable to dispose of the real estate, a part of the residuary estate, because prospective pur-

Supreme Court, December, 1920. [Vol. 114.

chasers question whether those represented by the trustees take the real estate, and whether if the heirs of testator take the remainder, the trustees have power to sell the real estate, bring this action under section 1836-a of the Code of Civil Procedure and sections 44 and 45 of the Decedent Estate Law against the heirs of testator, his widow and his former wife for a construction of the will, and it is conceded that the trust is void under the statute (Real Property Law, §§ 42, 61) providing against the suspension of the power of alienation for a longer period than two lives in being and forbidding the accumulation of rents and profits save as authorized by law. *Held:*

That the remainder did not vest in the remaindermen on the death of the testator but that their interests were contingent, and as to the principal were intended to vest only at the expiration of the trust period, provided that in the mea they remained in the active employment of the company in good standing, and that to delete the invalid provision f the will and declare that the remainder vested in the employees immediately upon the death of the testator would be in effect to make a new will. (P. 25.)

The case held to come within the rule that where there is not a direct devise or bequest to remaindermen but merely a direction to executors or trustees to pay over to or divide among a class at a future time, the vesting does not take place until the arrival of that time, and the gift is contingent upon survivorship and futurity is annexed thereto. (Id.)

The heirs of the testator took the real estate subject to charges thereon for the payment of an annuity to the first wife of testator, to the payment of his debts and funeral expenses and inheritance taxes and any other public or governmental charges and to the payment of money legacies given by the will if needed therefor, and also subject to the exercise of the power of sale conferred upon the executors and trustees for any authorized purpose. (Pp. 26, 27.)

While the attempt of testator to confer authority upon his executors and trustees to sell the real estate for the purposes of the invalid trust falls with it, yet if a sale of the real estate be necessary to render effectual any of the valid provisions of the will or to enable the executors and trustees to perform any of their duties, they are authorized to sell under the power of sale, which under sections 97 and 99 of the Real Property Law is valid as a power in trust. (Pp. 27, 28.)

ACTION for the construction of a will.

Sullivan & Cromwell (Royall Victor, John W. Van Allen, Ralph Royall and Miner W. Tuttle, of counsel), for plaintiffs.

Satterlee, Canfield & Stone (George F. Canfield, of counsel), for defendants Fostena Dickey, Walter Berry, Lester Berry, Leslie Berry, Linwood Berry and Gladys Berry.

Henry Warren Beebe, for Adelaide Leonard Pierce.

LAUGHLIN, J.   This is an action brought by the executors of and trustees under the last will and testament of John B. Pierce, deceased, for the construction of this will. The testator died on the 23d day of June, 1917, a resident of the state of Massachusetts, leaving a last will and testament duly executed on the 15th day of December, 1913, and a codicil thereto duly executed on the 19th day of May, 1916. The will was duly admitted to probate in Massachusetts, and it is conceded that all of its provisions are valid under the laws of that state. The testator left unproductive real estate in the state of New York of the value of about $150,000, the validity of the disposition of which is controlled by the laws of this state. Decedent Estate Law, § 47; *Hobson* v. *Hale,* 95 N. Y. 588. By paragraph I of the will, the testator directed that his debts, funeral expenses and every inheritance and governmental charge be paid out of his residuary estate, described in paragraph XVII. By paragraph II he disposed of certain personal property and real estate in Massachusetts. By paragraphs III–XVI, inclusive, with the exceptions of paragraphs X–XII, he gave certain cash legacies in common and preferred stock of the American Radiator Company

Supreme Court, December, 1920. [Vol. 114.

to his wife, to his two half-sisters, to an aunt, to five friends, to twenty-one friends and relatives, and to designated employees of the American Radiator Company. By paragraph X he gave his mining claims and property in Alaska, and debts owing to him there to a business associate. By paragraph XI he gave to his first wife, Mary A. Pierce, from whom he was legally separated, a house and lot occupied by her in California, and a cash legacy of $300 per month for life, and directed his trustees to make provision therefor from his residuary estate. In paragraph XII he set forth his reasons for the gifts of the common and preferred stock of the radiator company contained in paragraphs XIII–XVI, and for the provisions specified in paragraph XVII in their behalf provided that they should be living at the expiration of the trust period of ten years therein specified, or upon the death thereafter of the last survivor of his two half-sisters and his wife should they, or any of them, be living at the expiration of the trust period. Those reasons are stated to be that his business career had been almost wholly identified with the manufacture and sale of heating apparatus and appliances and that the growth of the business had been gradual, owing to his limited means at the outset, but that by application and perseverance it grew and prospered until the organization of the first company in 1892, since which time it has been largely augmented, and that this was due largely to the fine sense of honor, high quality of integrity and conscientious and loyal devotion to the performance of duty by his business associates and to the development in the business organization of a splendid spirit of co-operation in its various departments and among its employees until it steadily advanced the business operations of the company throughout this and foreign countries, and that grate-

Misc.]          Supreme Court, December, 1920.

fully paying tribute to his co-workers he further mani-
fested his appreciation by providing tangible benefit
to many of them out of the estate which they had
helped to expand and that as the largest part of his
residuary estate will consist of capital stock of the
radiator company he felt that by having mutuality
of interest between his wife and the beneficiary
employees of the company he would the more com-
pletely secure to her the continuance of a large yearly
income sufficient for all her possible requirements. By
paragraph XIII he gave to each of eight named
employees of the company, provided at his death they
should be in the active employ of the company, thirty-
two shares of the common stock, and described them
as participants in Benefit A. By paragraphs XIV–
XVI he gave on the same condition, respectively, to
forty other named employees sixteen shares each of
the common stock, to sixty-one other named employees,
eight shares each of the common stock, and to three
hundred and nineteen other named employees, four
each of the common stock, and described them as par-
ticipants in " Benefit B, Benefit C and Benefit D."
By paragraph XVII, as amended by the codicil, he
gave all the rest and residue of his property of every
name and description, wheresoever situate, to his trus-
tees, as follows: " * * * to hold, manage, control, in-
vest, dispose of and reinvest, as often as to them as may
seem desirable, in order to keep the same as productive
as may be and upon the further trusts to hold my
estate for income and accumulation for the period of
10 years from and after my death and thereafter until
each of my two half-sisters, Ellie P. Watts and Mary
B. Richardson, and also my wife, Adelaide Leonard
Pierce, have died. In the meantime and until the
expiration of aforesaid ten year period or until the
decease of my said two half-sisters, Ellie P. Watts and

Mary B. Richardson, and of my said wife, Adelaide Leonard Pierce, to divide and distribute the income of said trust estate as hereinafter provided, and finally upon the death of my two half-sisters, Ellie P. Watts and Mary B. Richardson, and my said wife, Adelaide Leonard Pierce, or at the end of the aforesaid ten year period in case this should extend beyond all of said three lives, to divide and distribute, subject to the provisions of paragraph ' XI,' the principal of said trust estate in manner hereinafter outlined."

By paragraph XVIII he gave the trustees power to collect rents, income, dividends and profits arising from the trust estate and to sell his real estate at public or private sale and to subdivide it into lots, and this power was also conferred with respect to real estate *purchased* by the trustees, and power to lay out streets and to improve real estate, and to lease it, and to buy or sell real estate or to change realty into personalty, and personalty into realty, and to invest and reinvest the proceeds in realty and personalty; and he gave them power to administer and manage the trust estate the same as he might have administered and managed it, and to exercise their power without obtaining authority from any court. He states in paragraph XIX that besides the income for his wife and half sisters he shall in the succeeding paragraph make provisions for income from and create participating interests in the final distribution of the residuary estate for the considerable number of the radiator company and that those whom he desired to participate therein " are the employes who at the time of my death will be rightful legatees " under paragraphs XIII to XVI inclusive, subject to later defeasance for either of the limitations or conditions imposed by that which follows: and he then classifies them, designates them as " Benefit A, B, C & D em-

ployes " the same as they are classified in the said last mentioned paragraphs of the will. It is then stated that wherever any benefit is provided for or conferred upon any employee of the radiator company, " * * * which is to issue from and out of the residuary estate, it will be understood that the beginning of as well as the continuation of the enjoyment of such benefit will be contingent upon such employe remaining in good standing, to do which it will be necessary, first, that he or she survives me, second, that he or she survives the period when any particular share of such benefit will mature for him or her and, third, that he or she continues in the active employ of said American Radiator Company, its successors or assigns, until the maturity of any particular accruing share of the benefit in his or her favor meaning and intending, that no ' Benefit A ' employe, no ' Benefit B ' employe, no ' Benefit C ' employe and no ' Benefit D ' employe, whom I have named or may hereafter designate can be regarded as in good standing excepting so long as he or she meets all the aforesaid conditions. Upon the failure of either of which the benefit shall from that instant end, and pro tanto be treated as if never conferred. The termination of employment with said American Radiator Company if enforced by the officers of said Company shall be conclusive, final and without right of appeal and will operate with like effect as the voluntary leaving the employ of the Company."

By paragraph XX he directed that out of the net income of the trust estate the trustees pay quarterly of each year thirty per cent to his wife, five per cent to each of his half-sisters and that the remaining sixty per cent should constitute a fund which he styled " employees fund," and subject to the limitations of paragraph XXXII he directed that it be distributed

among the four classes of employees who should be in
good standing at the particular period for disburse-
ment in such manner that the members of class " A "
should receive eight-fifteenths; of class " B " four-
fifteenths; of class " C " two-fifteenths, and of class
" D " one-fifteenth. In that paragraph he also pro-
vided that on the termination of any of the three life
interests of his wife and half sisters the share of in-
come for such interest should fall into and become a
part of the employees' fund from which disburse-
ments were to be made to the beneficiary employees in
good standing, and that when all three of the life
interests should have terminated then the period for
final distribution to the employees " will have arrived,
unless it be in abeyance for the unexpired portion of
the ten year period mentioned in paragraph XVII."
By paragraph XXXI he provided that when the time
for distribution arrived under paragraph XVII the
trust estate should be divided subject to the limitations
of paragraph XXXII and of the provisions of para-
graph XI.

" * * * among the employees in good standing,
who are then members of Benefits A, B, C and D, in
the same proportions laid down by me for the division
of income, namely, each member of ' Benefit A ' is to
receive 8 times as much as any member of ' Benefit
D,' or 4 times as much as any member of ' Benefit
C ' or twice as much as any member of ' Benefit B.'
Each member of ' Benefit B ' is to receive four times
as much as any member of ' Benefit D,' or twice as
much as any member of ' Benefit C,' or one-half as
much as any member of ' Benefit A.' Each member of
' Benefit C ' is to receive twice as much as any member
of ' Benefit D,' or one-half as much as any member of
' Benefit B ' or one-fourth as much as any member of
' Benefit A.' Each member of ' Benefit D ' is to

receive one-half as much as any member of ' Benefit C,' or one-fourth as much as any member of ' Benefit B,' or one-eighth as much as any member of ' Benefit A.' '' That paragraph further provides:

'' Realizing the possibility that all the members of one or more of said four classes or benefits may in consequence of death, resignation or otherwise, cease to remain in good standing at some one of the future periods for distribution of income or be so at the time set for final division, I will add another illustration, intended not to show a different method of division for it will be identical with the one heretofore laid down by me in connection with the division of income, but given solely in demonstration of the rule's application under conditions similar to those described for the purpose of example in the following:

'' Five Members of ' Benefit A.'

'' Twenty Members of ' Benefit C.'

'' Forty Members of ' Benefit D.' ''

Further assuming that the value of the estate for distribution is $120,000, the division would result in the following:

|  | Total |
|---|---|
| Each of the 5 members of ' Benefit A ' would receive $8,000 | $40,000 |
| Each of the 20 members of ' Benefit C ' would receive $2,000 | 40,000 |
| Each of the 40 members of ' Benefit D ' would receive $1,000 | 40,000 |
|  | $120,000 |

'' It will be apparent that the foregoing illustration applies equally well in the case of division of income as in the instance of final distribution.''

By paragraph XXXII as amended by the codicil

he limited the amount of annual income and the amount on final distribution which any member of any class should receive. By paragraph XXXIII added by the codicil he directed that the trustees, in case there should be a surplus of income owing to the limitation on the distributions thereof contained in paragraph XXXII should form the " John B. Pierce Foundation " and he specified what the object and purpose thereof should be and provided that any surplus of the corpus of the trust caused by the limitations with respect to the distribution thereof should go to the said foundation. These are the only provisions of the will deemed by any of the parties to be material to the points presented for decision.

It is conceded that the trust is void under our statutes providing against the suspension of the power of alienation for a longer period than two lives in being and forbidding the accumulation of rents and profits save as authorized (1 R. S. §§ 14, 15; Real Prop. Law, art. 3, §§ 42, 61), for the reason that in so far as it fixes the period at ten years for its continuance it is not limited on two lives in being (*Hone's Exrs.* v. *Van Schaick,* 20 Wend. 564; *Haynes* v. *Sherman,* 117 N. Y. 433) and in so far as limited to the lives of three persons specified it suspends the absolute power of alienation, and suspends the vesting of title absolute for more than two lives in being.

The trustees are unable to dispose of the real property situate in this state for the reason that prospective purchasers question whether those whom the trustees represent take the real estate, which owing to the sufficiency of the personal property to pay the cash legacies is part of the residuary estate, and whether, if the heirs of the testator take the remainder, the trustees have power to sell the real estate. The real estate is situate in the counties of Erie and Niag-

ara, and the plaintiffs have filed in the offices of the clerks of these counties exemplified copies of the will and probate proceedings in Massachusetts. The trustees have brought the action on the authority of *Monypeny* v. *Monypeny,* 202 N. Y. 90, and section 1836a of the Code of Civil Procedure and sections 44 and 45 of the Decedent Estate Law against all the heirs of the testator and his widow and his former wife. The heirs who have appeared claim that paragraphs XVII–XX, XXIII and XXVII in so far as they affect the real estate in this state are void, and that with respect to such real estate the testator died intestate and his heirs inherited it. The answer of the widow of the testator admits all the allegations of the complaint and she joins with the plaintiffs in the prayer for relief. The income derived from all the property has never been sufficient to produce an excess of income beyond the maximum amount which under the will and codicil the employees of the different classes were to receive and the John B. Pierce Foundation has never been formed. The testator had no dependents or relatives in whom he was specially interested excepting his widow, his former wife and his two half-sisters, who were of about his age and children of his mother by a second marriage. His other relatives were descendants of children of his father by a marriage prior to that with his mother, and with a few exceptions he merely knew of their existence. The learned counsel for the plaintiffs and for the widow of the testator contend that under the authority of many recent decisions of the Court of Appeals and of the Appellate Division the invalid provisions of the will with respect to the trust may be deleted and that the remainder should be deemed to have vested upon the death of the testator in the four classes of employees who, if living and in good standing in the

service of the company at the termination of the void trust were to take on the theory that it plainly appears from the provisions of the will that the testator was primarily interested in their taking the property. To apply the rule to the case at bar would be carrying it far beyond any of the authorities. It is a rule that has been adopted to avoid intestacy in whole or in part, but it is only applied where it is consistent with the testamentary plan and scheme of the testator as shown by the will and ordinarily its application is confined to wills whereby the remaindermen who were to take at the expiration of the period of the invalid trust are definitely specified and nothing remains for them to do after the death of the testator as a condition entitling them to take and where the trust may be said to be collateral to the desire of the testator that the remaindermen should take. *Kalish* v. *Kalish,* 166 N. Y. 368; *Matter of Hitchcock,* 222 id. 57; *Matter of Colgrove,* 221 id. 455; *Matter of Berry,* 154 App. Div. 509; affd., 209 N. Y. 540; *Matter of Thaw,* 182 App. Div. 368; *Chastain* v. *Tilford,* 201 N. Y. 338; *Hascall* v. *King,* 162 id. 134; *Brinkerhoff* v. *Seabury,* 137 App. Div. 916; affd., 201 N. Y. 559; *Smith* v. *Chesebrough,* 176 id. 317; *Matter of Butterfield,* 133 id. 473. In the case at bar, however, the testator gave outright upon his death to these classes of employees the amount of property which he intended they should then receive and various provisions of the will clearly show that he did not intend that they should participate in the remainder unless they continued in the service of the company in good standing until the time for distribution arrived; and the only apparent purpose of the ten-year period was as a probationary period. Final distribution was not to be made until the lapse of ten years, even though the three life beneficiaries died long prior thereto. It is argued that the ten year trust period was for the

*convenience* of the estate and the plaintiffs; but that cannot be for the testator, had very little property other than common and preferred stock in the radiator company. I appreciate, of course, that the remaindermen although divided into classes are all named; but while if the remainders were vested in them we might accelerate the vesting in possessions, I think that rule may not be applied where the application might enable remaindermen to take who were not certain of taking ultimately under the will as drafted. I am of opinion, therefore, that to delete the invalid provisions of the will and declare that the remainder vested in these employees immediately upon the death of the testator would in effect be making a new will for it is wholly problematical as to whether the testator, if he thought these provisions were invalid, would have given the different classes of employees the entire remainder or any part of it. Moreover it will be seen that the provisions of paragraph XVII as amended by the codicil, which are the only provisions under which the different classes of employees can claim as remaindermen, are a direction " to divide and distribute, subject to the provisions of Paragraph XI," which relates to the annuity of the former wife of the testator. The principal of the trust estate he directs shall be divided and distributed " in manner hereinafter outlined," referring to paragraph XXXII, which places a specific limitation on the amount to be paid over to each of the employees of the different classes. It will thus be seen that the testator did not intend that these remaindermen *in any and all events* should take the entire principal of the trust estate and he expressly provided in paragraph XXXIII, added by the codicil, that any surplus of the principal of the trust estate left after paying to each remainderman the maximum amount specified in paragraph XXXII as amended by the

codicil should be paid over to the " John B. Pierce Foundation.'' In these circumstances the court, I think, is not warranted in deleting all these provisions with respect to the trust and declaring that the remaindermen took the entire principal precisely the same as if the testator had included it in the other absolute legacies to them immediately on his death. The learned counsel for the plaintiffs contend that the will should be construed as vesting the entire remainder which the testator intended as a trust estate in the remaindermen subject only to be divested as to any of them dying before the period for distribution or failing to remain an employee in good standing until such period. I think that is not the true construction of the will. It must be borne in mind that by paragraph XIX hereinbefore quoted the testator provided that the right of any employee to participate in the distribution of the principal was contingent upon such employee remaining in good standing as an employee and continuing in the active employment of the radiator company, its successors or assigns, until by the expiration of the trust period the period for division and distribution should arise and he therein expressly provided that in default of that the benefit intended for such employee should end and " be treated as if never conferred '' and he left it entirely to the officers of the radiator company to terminate the employment of any employee and made their action with respect thereto as final and conclusive as a voluntary relinquishment of the employment of the employee; and it is also to be borne in mind that the testator attempted to vest the title to the trust estate in the trustee during the period of the trust with full authority to sell and convey and to invest and to reinvest and on that theory the absolute power of alienation would not have been suspended. *Robert* v. *Corn-*

*ing,* 89 N. Y. 225, 235. In these circumstances I am of opinion that the remainder did not vest in the remaindermen on the death of the testator but that their interests were contingent and as to the principal were intended to vest only at the expiration of the period of the trust provided that in the meantime they remained in the active employment of the company and in good standing. The case, I think, fairly falls within the rule that where there is not a direct devise or bequest to remaindermen but merely a direction to executors or trustees to pay over to or divide among a class at a future time the vesting does not take place until the arrival of that time and the gift is contingent upon survivorship and futurity is annexed thereto. *Warner* v. *Durant,* 76 N. Y. 133; *Delafield* v. *Shipman,* 103 id. 463; *Dougherty* v. *Thompson,* 167 id. 472; *Davis* v. *MacMahon,* 161 App. Div. 458; affd., 214 N. Y. 614; *Hennessy* v. *Patterson,* 85 id. 91; *Booth* v. *Baptist Church,* 126 id. 215. If the testator had given the *entire* remainder to the remaindermen and it were certain that identically the same remaindermen would take at the expiration of the trust period as if the gift to them were at the death of the testator then the invalid trust might be deleted, but here even if it could be held that the remainder vested in these various employees upon the death of the testator it was subject to be divested by death, resignation or discharge from the employ of the company prior to the time when under any theory of construction it is clear that the testator intended it should vest in them in possession. *Davis* v. *MacMahon, supra; Booth* v. *Baptist Church, supra; Cochrane* v. *Schell,* 140 N. Y. 516; *Knox* v. *Jones,* 47 id. 389. See, also, *Matter of Butterfield, supra.* The learned counsel for the heirs contends that a gift of a remainder which is vested but limited to take effect at the expiration of an invalid

trust is void and he cites therefore *Knox* v. *Jones, supra; Matter of Wilcox,* 194 N. Y. 288, but he concedes that those authorities are apparently in conflict with *Matter of Berry,* 154 App. Div. 509; affd., 209 N. Y. 540, and he endeavors to reconcile *Matter of Berry,.supra,* with the former decisions on the ground that the remainderman in that case was a charitable corporation. I think the earlier rule has been modified by *Matter of Berry* to the extent that where the remaindermen are definitely fixed and would necessarily be the same at the expiration of a void trust as at the time of the death of the testator then the void trust may be deleted and the remaindermen be permitted to take in instanter, but that it is not this case for here the remainders were, I think, contingent and it cannot be said that the remaindermen would be the same at the time the testator intended they should take as at the time of his death and therefore they may not be permitted to take by·deleting the invalid provisions. *Brinkerhoff* v. *Seabury, supra.* Manifestly the primary purpose of the testator in creating the invalid trust was either to put the employees who were to become remaindermen on probation or for the benefit of his widow and two half-sisters. If for the benefit of the latter then such primary purpose may not be disregarded and the disposition of principal as well as income would be void; if as I think his primary purpose was to insure the continuance of the remaindermen as faithful employees then too I think such primary purpose may not be disregarded and the employees should not be permitted to take as if they had complied with the conditions imposed on them by the testator throughout the trust period. I am, therefore, of opinion that the heirs take the real estate of the testator situate in the state of New York subject to the charges thereon for the payment of the annuity

to the first wife of the testator and to the payment of the debts of the testator and funeral expenses and the inheritance taxes and any other public or governmental charges and subject to the payment of the cash legacies given by the will if needed therefor.

The remaining question is as to whether the trustees have a valid power of sale under which they may convey good title to the real estate. It was competent for the testator if he saw fit to devise his real property to his executors and trustees for the purpose of sale and that would be valid as a power to sell even though he did not by the will dispose of the remainder left after the payment of his debts and funeral expenses or other charges and where he creates an invalid express trust and directs or authorizes his executors or trustees to perform an act which may be lawfully performed under a power such as to sell his real estate the trust is valid as a power in trust. Real Prop. Law, §§ 97, 99. The provisions of the will are, I think, sufficiently broad to authorize the executors and trustees to sell the real estate of the testator even though the provisions with respect to the use and disposition thereof in so far as it concerns the trust may be invalid. It is not material to the heirs whether the executors and trustees are empowered to sell the real estate for they will be accountable to the heirs for the proceeds thereof and doubtless it would be much more convenient to have the sale made by them than by the heirs who are numerous and scattered throughout the country. In so far as the testator attempted to devise the real estate here to the executors and trustees in trust with authority to sell in order to carry out the purposes of the invalid trust no title to the trust estate passed to the executors and trustees and the attempt to confer authority on them to sell the real estate for the purposes of the invalid trust falls with the trust. *Bene-*

Supreme Court, December, 1920. [Vol. 114.

dict v. *Webb,* 98 N. Y. 460; *Garvey* v. *McDevitt,* 72 id. 556; *Brewer* v. *Brewer,* 11 Hun, 147; affd., 72 N. Y. 603; *Haynes* v. *Sherman,* 117 id. 433; *Dana* v. *Murray,* 122 id. 604; *Allen* v. *Allen,* 149 id. 280. In *Chamberlain* v. *Taylor,* 105 N. Y. 184–194, it is stated that the doctrine of equitable conversion only applies to property validly devised, but it was at least assumed in *Hobson* v. *Hale,* 95 id. 588, 607, that it may obtain where there has been no valid disposition of the property by the will.

If, however, a sale of the real estate in question be necessary to render effectual any of the valid provisions of the will or to enable the executors and trustees to perform any of their duties, then, I think, they would be authorized to sell under the power of sale. *Chamberlain* v. *Taylor, supra; Asche* v. *Asche,* 113 N. Y. 322. No actual necessity for a sale for the payment of debts or funeral expenses or legacies has been shown; but it appears that ancillary letters were duly issued to the executors and trustees by the Surrogate's Court of Erie county, and that a proceeding was duly instituted to determine the amount of the transfer tax on the real estate in question and that the amount thereof was duly determined and assessed, and it thereupon became the duty of the executors and trustees to pay it and they did so prior to the commencement of this action. I am of opinion that it was their duty under the will to pay the transfer tax and that for that purpose they were authorized by the power of sale contained in the will to sell the real estate or any part thereof. The transfer taxes were liens on the real estate and equity requires that the plaintiff as against the heirs be subrogated to the lien of the state. Title to the real estate not having passed under the will, but having vested in the heirs subject to the exercise of the power of sale for any authorized pur-

pose, the proceeds of such a sale not required for the purpose for which the sale was made would necessarily still be deemed realty, and the title of the heirs would remain unaffected by such a sale excepting by being transferred from the land to the proceeds of the sale. It appears that the plaintiffs in good faith took charge of this real estate under the will and have collected rents, kept buildings in repair and paid all taxes, insurance and other charges against the same. In so doing they have expended from the funds of the estate many thousand dollars more than they have received. No heir has questioned their authority and control over this real estate and it is reasonably to be inferred that all the heirs have acquiesced therein. In the circumstances the heirs should be deemed estopped from claiming that such expenditures were voluntarily made by the plaintiffs and without authority under the will.

A decree may be prepared construing the will and power of sale in accordance with these views and adjudging that the plaintiffs are authorized under the power of sale to sell the real estate and reimburse the estate for all expenditures so made for transfer taxes, and in managing the real estate in question, together with interest thereon and for the payment of all costs and allowances to be authorized and allowed by the decree to be settled on notice, and authorizing a sale of the real estate in question by the plaintiffs as such executors and trustees in separate parcels to the extent necessary to satisfy the lien for the transfer tax and the lien in their favor which will be given by the decree for their expenses and disbursements in handling the real estate and the costs and allowances that will be provided for in the decree.

Judgment accordingly.